MASTIN et al. v. CHICAGO, R. I. & P. RY. CO. et al.

(Circuit Court, W. D. Missouri, W. D.   July 6, 1903.)

No. 2,748.

1. REMOVAL OF CAUSES—FEDERAL QUESTION.

An action to recover damages alleged to have been sustained by plaintiff by reason of the shipment by defendant of diseased cattle into a state from a territory, in violation of a law of the United States and of the regulations made by the Secretary of Agriculture for its enforcement, is one arising under such law and removable on that ground, although it is also alleged, as additional grounds of recovery, that shipment of the cattle was a violation of the laws of the territory and of the state into which they were brought.

2. JURISDICTION OF FEDERAL COURT—ESTOPPEL OF REMOVING DEFENDANT TO DENY.

A defendant on whose petition a cause is removed into a federal court is estopped to deny the jurisdiction of such court to render judgment against him therein, unless on the ground that the state court was without jurisdiction.

On Motion to Remand to State Court.

Ellis, Cook & Ellis, for plaintiff.
Frank P. Sebree, for Chicago, R. I. & P. Ry. Co.
Botsford, Deatherage & Young, for Drum-Flato Commission Co.

PHILIPS, District Judge. The plaintiffs are citizens of the state of Missouri, as also the defendant Drum-Flato Commission Company, and the Chicago, Rock Island & Pacific Railway Company is a citizen of the state of Iowa. The cause was removed from the state circuit court to this court on petition of the defendants, on the ground that the plaintiffs' petition discloses a cause of action arising under the laws of the United States; the defendant railway company

¶ 1. Jurisdiction of federal courts in actions involving federal question, see notes to Bailey v. Mosher et al., 11 C. C. A. 308; Montana Ore Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.

adding, as an additional ground of removal, that the cause of action as to it is separable.

The petition contains two counts. The substantive allegations of the first count are that, during and prior to the month of June, 1902, the disease known as Southern, Texas, or Spanish fever existed among the cattle of Greer county, Okl. T.; that said disease is contagious and infectious to a deadly degree to native cattle; that such cattle south of Central Oklahoma have the power, during the spring and summer months of the year, to communicate said disease to cattle raised in Missouri, and is accomplished by contact or near approach of such Southern cattle, or by the latter pasturing upon or passing over ground; that the authorities of the federal government, under powers conferred by acts of Congress, and also the authorities of Oklahoma Territory, on account of the universality of this disease in Greer county and vicinity aforesaid, declared and published stringent quarantines prohibiting the shipment of any cattle from said county, except for through transit to slaughter beds for immediate killing; that said quarantines have been in full force since prior to January 15, 1902; that by virtue of the powers conferred by act of Congress approved May 29, 1884 (23 Stat. 31, c. 60 [U. S. Comp. St. 1901, p. 3182]), and the amendments thereto, the Commissioner of the Department of Agriculture caused to be put in force prior to February 1, 1902, rules and regulations governing the transportation, yarding, sale, and slaughter of animals coming under interstate commerce or traffic; that among such rules and regulations is a provision establishing a quarantine line, including said Greer county, as quarantine territory; also that, in unloading said cattle at their point of destination, chutes, alleyways, and pens must be isolated and set apart to receive them, and no other cattle shall be admitted thereto; that all cars carrying such cattle must bear placards that such cars contain Southern cattle, and each waybill, conductor's manifest, and bill of lading must bear on its face a similar statement; and that the stockyards and parties receiving such cattle must place them in such isolated pens. It is averred that, of all the facts aforesaid, defendants, and each of them, had at all times full knowledge. It is further alleged that on the 23d of June, 1902, a certain owner of such infected cattle of said territory, and the defendants, all having the knowledge aforesaid, and with the knowledge that the cattle referred to in the petition were Southern, Texas or Indian cattle from said Greer county, and that for the purpose of profit and advantage to each, and to aid and assist the owner of such cattle in marketing the same, the defendants assisted in shipping said cattle from said territory to the Kansas City Stockyards, and assisted the owner in marketing the same, which were transported in cars by the defendant railway company consigned to the defendant commission company for sale; that at the time of leaving said territory said cattle had not been by federal government inspectors declared free from disease or so-called ticks, and, in obedience to the law, the cars carrying such cattle bore placards that they contained cattle quarantined or infected with Texas fever, and the waybills, manifests, and bills of lading were similarly indorsed

and stamped; that before reaching said stockyards said placards were, with the knowledge and consent of the defendants, to promote the sale of such cattle, removed from such cars, and on their arrival at the Kansas City Stockyards they were by the owner and defendants unloaded from said cars, and carelessly, negligently, and in violation of law and of the rules and regulations prescribed by the federal government and by said stockyards, turned and driven by defendants into the pens for native healthy cattle; that they were kept from immediate slaughter and from the quarantine division of said stockyards, which, under the requirements of law, were set apart for such infected and Southern cattle.

The petition then avers the sale of said cattle to the plaintiffs and their removal to their farm, and that, by reason of their being so infected with said disease, many of them were lost to the plaintiffs or damaged, and the disease was communicated to other cattle of the plaintiffs, to their damage, etc.

Without reviewing the authorities, the rule of law may be briefly stated to be that a cause of action involving the requisite amount is removable from the state court to a United States court, regardless of the citizenship of the parties, when it appears on the face of the plaintiff's petition that the action arises under some act of Congress, or, stated in other form, some law of the United States. And such act or law is so involved when it appears from the statement of the petition that some title, right, privilege, or immunity on which the recovery may depend or by which it may be defeated, as the act or law may be construed or applied one way or the other, is presented by the plaintiff's petition.

It is apparent, taking the count in its entirety, that, as a material part of the complaint, distinctive importance is given to the fact that the cattle in question were the subject of interstate commerce, and that their importation from the territory of Oklahoma into the state of Missouri was therefore the proper subject of congressional regulation. Direct reference, therefore, is made to the act of Congress, which is shown as the animal industry act of May 29, 1884, 23 Stat. 31, c. 60 [U. S. Comp. St. 1901, p. 3184]. By the sixth section of said act all railroad companies within the United States are forbidden to receive for transportation or transport from one state or territory to another—

"Any live stock affected with any contagious, infectious, or communicable disease, and especially the disease known as pleuro-pneumonia; nor shall any person, company or corporation deliver for such transportation to any railroad company or master or owner of any boat or vessel, any live stock, knowing them to be affected with any contagious, infectious, or communicable disease; nor shall any person, company or corporation drive on foot or transport in private conveyance from one state or territory to another, or from any state into the District of Columbia, or from the District into any state, any live stock, knowing them to be affected with any contagious, infectious or communicable disease, and especially known as pleuro-pneumonia: provided, that the so-called splenetic or Texas fever shall not be considered a contagious, infectious, or communicable disease within the meaning of sections four, five, six and seven of this act, as to cattle being transported by rail to market for slaughter, when the same are unloaded only to be fed and watered in lots on the way thereto."

Authority by this act is conferred upon the Commissioner of Agriculture to make needful rules and regulations for the better enforcement of the act. The petition makes direct reference to this act of Congress and to certain regulations, with the substantive averment that the shipment was made in violation of the provisions of the statute and the regulations prescribed thereunder. It is apparent that the pleader had in mind the provisions of said section 6, which makes it a basis of a violation of the statute that the shipper should have guilty knowledge of the disease or infectious character of the cattle; and that, without the cattle having been declared immune by the government inspectors, they were shipped, placarded in compliance with the regulations of the Agricultural Department, which placards were fraudulently torn off by defendants in transit; and it is then averred that the cattle were unloaded, "in violation of law and of the rules and regulations prescribed by the federal government," in said stockyards, and placed in improper pens, etc. What law and regulations were thus violated? Evidently the law of Congress and the regulations of the Commissioner of Agriculture made in pursuance thereof. The predicate of the action is the requirements of the act of Congress and the regulations of the Commissioner of Agriculture, and the positive violation thereof by the defendants. The fact that in the same paragraph or count it is alleged that the shipment was also made in violation of the regulations of the territory of Oklahoma, and that a failure to segregate the cattle in pens when they arrived in the Kansas City Stockyards was also contrary to the regulations of said stockyards company, does not in the least affect the federal question on which the case is principally bottomed. Black's Dillon on Removal of Causes, § 113, declares the rule to be as follows:

"It is no obstacle to the removal of a cause, as one arising under the Constitution and laws of the United States, that it may involve other questions which are not of a federal character, but depend upon general principles of law. It is the presence of the federal question which determines the removability of the case. If such a question is necessarily involved, though it be but one of several issues—if, as some of the cases express it, •'there be a single such ingredient in the mass'—it is sufficient to give the federal courts jurisdiction, and that jurisdiction will extend to the final settlement and determination of the entire controversy, and not merely to the solution of the federal question involved. Moreover, the act of Congress contemplates the removal of the case as a case, not a mere fragment of it. It relates only to the entire action, and does not permit the removal of a part thereof when the rest is not removable."

Judge Caldwell, speaking for the Court of Appeals for this Circuit in Bailey v. Mosher et al., 63 Fed. 488, 11 C. C. A. 304, 27 U. S. App. 339, in effect took the same view of this question. Notwithstanding the pleader in that case conjoined in the same paragraph or count showing a violation of the national banking act by the defendants, giving a cause of action to the plaintiffs, with allegations simulating statements of a common-law action for fraud and deceit, he said:

"We cannot adopt the view of plaintiff in error that those clauses of the petition which state or tend to state a cause of action for deceit at common law should be segregated from the other clauses of the petition and held to

constitute the statement of the cause of action. The court cannot reject the allegations of the petition, which do state a cause of action under the banking act, for the purpose of converting mere matter of inducement or surplusage, contained elsewhere in the petition, into a substantive statement of a cause of action different from that which the petition in terms declares to be the foundation of the action. * * * If, in drafting the petition, the pleader supposed he was stating more than one cause of action, he would undoubtedly have separately stated and numbered them. * * * No one can point out in this petition where the statement of one cause of action ends and another begins."

On the argument of this motion at the hearing, counsel for plaintiffs suggested that the allegations respecting the provisions and violations of the act of Congress and the regulations made thereunder might be entirely eliminated from the petition, yet leave enough to show a right of action. A sufficient answer to this would be that the character of the petition, and the cause of action that may be supported by evidence on the trial, is to be determined from the face of the petition as it was when the cause was removed. Suppose on the trial the plaintiffs should fail to show the alleged requirements of the territory of Oklahoma, or those of the stockyards company alleged to have been also violated, they could nevertheless resort to the other allegations involving the federal statutes and regulations, and the construction placed thereon by the court might control.

If any doubt remained in the mind of the court as to the construction placed upon this count of the petition, it is entirely removed by a consideration of the second count. Having conceived that the shipment in question was perhaps violative of both the federal and state statutes, the pleader based the first count on the violations of the federal law and regulations, and then proceeded in the second count to the statement of a cause under the statutes of Missouri, which makes the importer of Texas or Indian fevered cattle into the state responsible for any damages resulting from the communication of that disease to domestic or native cattle. As it is competent for the state, in the exercise of its police power, to enact and enforce such statute, independent of any regulations yet made by Congress respecting the importation of diseased or infected cattle from one state or territory to another (Reid v. Colorado, 187 U. S. 137, 23 Sup. Ct. 92, 47 L. Ed. ——), it at once becomes apparent that it was the purpose of the pleader, if he should fail to make out his case under the federal statute, to rely ultimately upon the statute of Missouri.

It is unnecessary to discuss the question, raised by the petition for removal on behalf of the railway company, as to whether or not the cause of action is separable, as the jurisdiction is sustainable on the other ground. In answer to the suggestion of plaintiffs' counsel that he resists the removal on the ground that he apprehends any judgment he might obtain in this court would be invalid if the removal is not warranted on the ground claimed in the petition for removal, the court understands the rule to be as stated in Ayers v. Watson, 113 U. S. 599, 5 Sup. Ct. 631, 28 L. Ed. 1093, that "since the removal was effected at the instance of the party who now makes the objection, we think that he is estopped." And the proposition

is broadly stated by the court in Cowley v. Northern Pac. Railroad Co., 159 U. S. 570–583, 16 Sup. Ct. 127, 40 L. Ed. 263, as follows:

"The case having been removed to the Circuit Court upon the petition of defendant, it does not lie in its mouth to claim that such court had no jurisdiction of the case unless the court from which it was removed had no jurisdiction."

See, also, Woodcock v. Baltimore & O. R. Co. (C. C.) 107 Fed. 767; Eustis et al. v. City of Henrietta, 74 Fed. 577, 20 C. C. A. 537; Edwards v. Con. Mut. Life Ins. Co. (C. C.) 20 Fed. 452; Fisher v. Shropshire, 147 U. S. 145, 13 Sup. Ct. 201, 37 L. Ed. 109.

The motion to remand is denied.