BECK v. JOHNSON et al.

(Circuit Court, W. D. Kentucky. April 13, 1909.)

1. REMOVAL OF CAUSES (§ 25*) — GROUNDS — CAUSE ARISING UNDER UNITED STATES LAWS.

Whether an action is removable as arising under the laws of the United States must be determined on the averments of plaintiff's petition alone.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 58, 59; Dec. Dig. § 25.*]

2. REMOVAL OF CAUSES (§ 19*)—CASE IN LAW OR IN EQUITY.

A case in law or in equity consists of the right of one party as well as the other, and is removable as arising under the Constitution or laws of the United States whenever its correct decision depends on the construc-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion of either, or when the title or right set up by the party may be defeated by one construction of the Constitution or laws of the United States and sustained by the opposite construction.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 37; Dec. Dig. § 19.*]

3. DEATH (§ 47*)—PETITION—NEGLIGENCE.
Under the Kentucky practice to which federal courts sitting in that state are required to conform in suits at law by Rev. St. § 914 (U. S. Comp. St. 1901, p. 684), it is not essential for plaintiff, in an action for wrongful death, to state any more in his petition than that the death of his intestate was caused by defendant's negligence, a specification of the details of the acts constituting the negligence being unnecessary.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 61; Dec. Dig. § 47.*]

4. DEATH (§ 57*)—ISSUES AND PROOF.
In an action for wrongful death alleging negligence generally, evidence showing defendant's failure to observe a federal or state statute, or a federal, state, or municipal regulation, is admissible to prove negligence.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 74; Dec. Dig. § 57.*]

5. EVIDENCE (§§ 34, 47*)—JUDICIAL NOTICE—UNITED STATES LAWS—EXECUTIVE REGULATIONS.
State and federal courts take judicial notice of the laws and executive regulations of the United States.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 49, 50, 69; Dec. Dig. §§ 34, 47.*]

Judicial notice of public laws and regulations, see note to Smith v. City of Shakopee, 44 C. C. A. 4.]

6. REMOVAL OF CAUSES (§ 19*)—GROUNDS—"LAWS OF THE UNITED STATES."
The phrase, "laws of the United States," as used in the removal acts, authorizing removal of a cause arising under the laws of the United States, means acts of Congress, and does not include executive rules and regulations, unless a recovery of damages is expressly authorized by statute for a disregard of such regulations.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 37; Dec. Dig. § 19.*]

7. COLLISION (§ 16*)—REGULATIONS—STATUTES—CONSTRUCTION.
Rev. St. § 4412 (U. S. Comp. St. 1901, p. 3020), requiring the board of supervising inspectors to establish regulations to be observed by steam vessels in passing each other, which are to be printed, signed, and posted, applies only to regulations to be observed by passing steam vessels.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 16.*]

Signals of meeting vessels, see note to The New York, 30 C. C. A. 630.]

8. SHIPPING (§ 158*)—INJURIES—STATUTES—CONSTRUCTION.
Rev. St. § 4413 (U. S. Comp. St. 1901, p. 3020), provides that every pilot, engineer, mate, or master of any steam vessel who neglects or willfully refuses to observe the regulations established pursuant to section 4412 shall be liable for all damages sustained by a passenger in his person or baggage by such neglect. *Held*, that such section only authorizes a recovery of damages by passengers against pilots, engineers, mates, and masters, as distinguished from the owners of vessels.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 158.*]

9. PLEADING (§ 63*)—STATUTORY ACTION—PETITION.
Where plaintiff founds his right of action on a special statute, his petition must state facts showing that the action is within the terms of the statute.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 133; Dec. Dig. § 63.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**10. SHIPPING (§ 158\*)—REGULATIONS—STATUTES.**

Act Cong. Jan. 18, 1897, c. 61, 29 Stat. 489 (U. S. Comp. St. 1901, p. 3029), provides that all vessels above 15 tons burden carrying passengers and propelled by gas, fluid, naphtha, or electric motors are subject to the provisions of Rev. St. § 4426 (U. S. Comp. St. 1901, p. 3029), relating to inspection, and requiring engineers and pilots therefor, and declaring that all vessels so propelled, without regard to tonnage, are subject to section 4412 (page 3020) and so much of sections 4233 (page 2893) and 4234 as the board of supervising inspectors shall deem applicable and practicable for such navigation. *Held*, that such provisions apply to vessels propelled by gas, fluid, naphtha, or electric motors, and do not relate to steam vessels employed in inland navigation.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 158.\*]

**11. COLLISION (§ 75\*)—SIGNAL REGULATIONS—STATUTES—APPLICATION—"MERCANTILE MARINE."**

Rev. St. § 4233 (U. S. Comp. St. 1901, p. 2893), providing that steam vessels, when towing other vessels, shall carry two bright, white masthead lights vertically, in addition to their side lights, which shall be of such a character as to be visible on a dark night with a clear atmosphere for at least 5 miles and show a uniform unbroken light over an arc of the horizon at 20 points of the compass. *Held*, that such section applied only to the navy and mercantile marine of the United States, "mercantile marine" being used to mean the merchant service or business of commerce at sea, and that the section did not apply to steam vessels engaged in towing on the inland rivers of the United States.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 105–108; Dec. Dig. § 75.\*]

Heavrin & Woodward, for plaintiff.

J. E. Williamson, H. P. Taylor, and H. J. Peckinpaugh, for defendants.

EVANS, District Judge. This civil action at law for the recovery of $20,000 damages for the death of plaintiff's intestate was brought in the state court, and, having been removed by the defendants to this court, a motion to remand it has been made by the plaintiff. The petition for removal, after showing (as, indeed, the plaintiff's petition on its face had done) that the matter in dispute exceeds in value the sum of $2,000 exclusive of interest and costs, asserts that "the action is one arising under the laws of the United States," and is therefore within Removal Act March 3, 1875, c. 137, 18 Stat. 470 (U. S. Comp. St. 1901, pp. 508, 509). Whether or not this is correct is the sole question to be solved in passing upon the motion to remand.

The plaintiff's petition, after showing that R. D. Beck died intestate, and that plaintiff was appointed and qualified as his administrator by the proper state court, avers in paragraph 1 that on January 4, 1909, the defendant P. H. Johnson was the owner, and that the defendant T. K. Bowles, under the owner's employment, was the master, captain, or pilot, of the steamboat Samuel, and that:

"On or about the 4th day of January, 1909, while the defendant Bowles was employed by his codefendant Johnson as master and pilot of said boat, the Samuel, and while the defendant Bowles was acting in the line of his employment in the control, management, and direction of said boat, and while he was at the wheel piloting same, and in supreme command thereof, for his codefendant Johnson, who was then and there the owner thereof, the defendant Johnson, acting by and through his codefendant Bowles as aforesaid,

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

negligently and carelessly managed and operated the steamboat Samuel so as to cause the same, and the barges attached to same, to run against and over the raft which was tied up and anchored on the Ohio county shore of Green river, and on which the plaintiff's intestate was sleeping, and while plaintiff was exercising care of his own safety on Green river in Ohio county, Ky., thereby bruising, injuring, and drowning the said R. D. Beck, so that the said R. D. Beck did die, as a direct and proximate result thereof, within one hour thereafter, and this the defendant and each of them did in Ohio county, Ky., on or about the 4th day of January, 1909.

"Plaintiff states that the injuries above referred to were inflicted, and the collision above referred to occurred, about 11:30 p. m. on January 4, 1909, on Green river, in Ohio county, Ky., and that Green river is and was then a navigable stream, whose waters flowed into the Gulf of Mexico, and the said steamboat Samuel was then and there subject to the rules adopted by the board of the United States supervising inspectors, steamboat inspection service, February, 1907, which was approved by the Secretary of Commerce and Labor on February 25, 1907, under the authority of section 4412, Rev. St. U. S. (U. S. Comp. St. 1901, p. 3020), and of the act of Congress approved January 18, 1897, c. 61, 29 Stat. 489 (U. S. Comp. St. 1901, p. 3029); that the steamboat Samuel was then and there towing three barges in front of it by pushing against the same, and also towing one barge on each side of it, at the time and place of the injuries complained of; that the moon was shining brightly, and only a thin mist or fog was in existence at the time and place of the injury and collision hereinbefore set out; and that rule 13 of the United States board of supervising inspectors, above referred to, is as follows:

"'Rule 13. In fog, mist, falling snow, or heavy rain storms, whether by day or by night, the signals described in this rule shall be used by steam vessels:

"'(a) A steam vessel under way in fog or thick weather shall sound at intervals of not more than one minute a prolonged blast of whistle, of from four to six seconds' duration, except that when towing one or more vessels, she shall sound three blasts of the whistle in quick succession.'

"And that rule 14 of the board above referred to is as follows:

"'Rule 14. Every steam vessel shall, in thick weather, by reason of fog, mist, falling snow, heavy rain storms, or other causes, go at moderate speed.'

"And further, as a part of rule 14 of said board, on page 11 thereof:

"'The lights for barges and canal boats when towed ahead or alongside of the steamer, as is customary upon rivers whose waters flow into the Gulf of Mexico, shall be as follows:

"'When one barge is towed by a steamer, and such barge is towed ahead, such barge shall have a green light on the starboard bow and a red light on the port bow. When such barge is towed alongside of the steamer on the starboard side, such barge shall have a green light on the starboard bow. When such barge is towed alongside of a steamer, on the port side, such barge shall have a red light on the port bow. When two barges are towed alongside of a steamer, one on the starboard and one on the port side, the starboard barge shall carry a green light on the starboard bow, and the port barge shall carry a red light on the port bow. · When two or more barges are towed ahead, the green light shall be placed on the starboard bow of the starboard barge, and a red light on the port bow of the port barge, and at a distance of not less than 10 feet above the surface of the water.

"'The colored side lights referred to in the foregoing rules must be fitted within board screens, so as to prevent them from being seen across the bow, and of such a character as to be visible on a dark night, with a clear atmosphere, at a distance of at least two miles, and so constructed as to show a uniform and unbroken light over an arc of the horizon of 10 points of the compass, and so fixed as to throw the light from right ahead to 2 points abaft the beam on either side. The minimum size of glass globes shall not be less than 6 inches in diameter, and 5 inches high in the clear.'

"A copy of the rules of the board of the United States supervising inspectors is filed herewith as a part hereof, marked 'Pilot Rules.'

"That by Rev. St. U. S. § 4233 (U. S. Comp. St. 1901, p. 2893), steam vessels when towing other vessels are required to carry two bright white masthead

lights vertically in addition to their side lights, so as to distinguish them from other vessels, which masthead lights were required to be of such character as to be visible on a dark night with a clear atmosphere at a distance of at least 5 miles, and so constructed as to show a uniform and unbroken light over an arc of the horizon of 20 points of the compass.

"Plaintiff says that, at the time and place of the collision above referred to, the defendants, and each of them, acting jointly, negligently failed to, and did not, sound three blasts of the whistle in quick succession each minute immediately before or at the time of the collision, nor did the defendants, or either of them, sound any blast of the whistle; that the defendants, and each of them, negligently failed to, and did not, have any lights whatever on the barges she was towing, nor on any of said barges, and the same, nor any of them, were lights as required by law and the rules then and there in force, nor were the lights on said barges or boat, or any of them, visible on a dark night with a clear atmosphere at two miles or any distance, nor were they so constructed as to show a uniform or unbroken light over an arc of the horizon of 10 points of the compass, and the defendants and each of them negligently failed to and did not carry on the steamer Samuel, at the time and place of the collision, the white masthead lights required to be carried, and that the lights carried on the Samuel could not, on a dark night with a clear atmosphere, be visible at a distance of 5 miles, or any distance in excess of 200 yards; and the defendants, and each of them, negligently failed to, and did not, at the time and place of the collision and injuries aforesaid, go at a moderate speed, but negligently and carelessly operated said vessel at an excessive rate of speed, and under a full head of steam, and negligently and carelessly directed and controlled the course of same, and negligently and carelessly failed to and did not keep any lookout or use ordinary care to avoid the collision and injuries complained of; that the negligence hereinbefore complained of, and all of it, was the joint and concurrent negligence of the defendants, and each of them, by reason of which plaintiff's decedent was injured as hereinbefore set out, from which injuries the plaintiff's intestate did then and there die."

In paragraph 2 of the petition the plaintiff avers that:

"The defendant T. K. Bowles, at the time and place of the injuries complained of, in the collision hereinbefore set out, was grossly incompetent to manage, navigate, pilot or command the steamboat Samuel, and was unskilled in the management and navigation of steam vessels, and his incompetency was well known to himself and to his codefendant Johnson at and for many months prior to the time of the collision referred to in the first paragraph and the injuries to plaintiff's intestate; and that by reason of the incompetency and lack of skill of the said T. K. Bowles, acting in conjunction with the negligence set out in the first paragraph, the steamer Samuel was, by the joint negligence of each of the defendants, caused to push its barges and tows against and over the raft and the body of the plaintiff's intestate, inflicting the injuries which resulted in the death of said intestate, as is set out in the first paragraph."

For the present, viewing the administrator's right to recover damages for the alleged negligent killing of his intestate apart from the provisions of the statutes of the United States and the regulations prescribed thereunder referred to or set out in the petition, it may be said that that right rests upon section 241 of the state Constitution, which is as follows:

"Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same. Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person. The General Assembly may provide how the recovery shall go and to whom belong; and until such provision is made the same shall form part of the personal estate of the deceased person."

So far as the law of Kentucky goes, that section furnishes a clear basis for the claim of a personal representative to recover damages for the negligent killing of his decedent.

We all know, of course, that at common law no action for injuries resulting in death could be successful because of the maxim "Actio personalis moritur cum persona." Lord Campbell's act removed this obstacle in England, and probably most of the states have laws of a similar nature. In Kentucky former legislative enactments have been made permanent by the constitutional provision supra. But excepting in recent legislation in regard to persons employed by carriers engaged in interstate commerce, Congress has not, unless by section 4413, Rev. St. (U. S. Comp. St. 1901, p. 3020), presently to be noticed, dealt with the question otherwise than by section 721 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 581), which may have an important application, and which is as follows:

"The laws of the several states, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply."

Nearly, if not all, of the reported cases which have been tried in the federal courts involving a claim to damages where death ensued have been based upon local statutes. A great number of cases might be named, but it may suffice to note as instructive Dennick v. Railroad Co., 103 U. S. 17, 18, 26 L. Ed. 439, Stewart v. Baltimore & Ohio R. R. Co., 168 U. S. 448, 18 Sup. Ct. 105, 42 L. Ed. 537, and Railroad Co. v. Barron, 72 U. S. 104, 18 L. Ed. 591.

While we think it clear that in the direct and primary sense this action arises under the Constitution and laws of Kentucky, which give the right to maintain a suit for the negligent infliction of injuries resulting in death, we must nevertheless consider whether there is not a sense within which we are required to hold that it is an action arising under the laws of the United States, and therefore removable. The phrase, "arising under the Constitution and laws of the United States," is substantially as old as the government, and has many times been the subject of consideration and interpretation by the Supreme Court, though, so far as we can find, in no case precisely like this. The question whether an action arises under the laws of the United States must of course be determined upon the averments of the plaintiff's petition alone, and the test of its solution was originally stated by Chief Justice Marshall in Cohens v. Virginia, 6 Wheat. 379, 5 L. Ed. 257, thus:

"A case in law or in equity consists of the right of one party as well as the other, and may truly be said to arise under the Constitution or a law of the United States whenever its correct decision depends on the construction of either."

And in Osborn v. Bank of United States, 9 Wheat. 822, 6 L. Ed. 204, an action was said to arise under the Constitution or laws of the United States—

"when the title or right set up by the party may be defeated by one construction of the Constitution or laws of the United States but sustained by the opposite construction."

These general propositions have never been questioned in the many succeeding cases which have been adjudicated in the Supreme Court, but where different facts have called for it the opinions of the court in late cases introduce what may be regarded as qualifying elements. In Defiance Water Co. v. Defiance, 191 U. S. 190, 191, 24 Sup. Ct. 63, 66, 48 L. Ed. 140, an elaborate effort had been made in the bill of complaint to show that the action was one arising under the Constitution of the United States, and the Circuit Court proceeded upon the idea that the effort had succeeded, but the Supreme Court took a different view, and the Chief Justice, in delivering its opinion, said:

"We have repeatedly held that 'when a suit does not really and substantially involve a dispute or controversy as to the effect or construction of the Constitution or laws of the United States, upon the determination of which the result depends, it is not a suit arising under the Constitution or laws. And it must appear on the record, by a statement in legal and logical form, such as is required in good pleading, that the suit is one which does really and substantially involve a dispute or controversy as to a right which depends on the construction of the Constitution or some law or treaty of the United States, before jurisdiction can be maintained on this ground."

In Devine v. Los Angeles, 202 U. S. 332, 333, 26 Sup. Ct. 657, 50 L. Ed. 1046, the Chief Justice used this language:

"There being no diversity of citizenship, the jurisdiction of the Circuit Court could only be maintained upon the ground that the suit arose under the Constitution or laws or treaties of the United States, and a suit does not so arise unless it really and substantially involves a dispute or controversy as to the effect or construction of the Constitution or some law or treaty of the United States, upon the determination of which the result depends. And this must appear from the plaintiff's statement of his own claim, and cannot be aided by allegations as to the defenses which might be interposed."

In Minnesota v. Northern Securities Co., 194 U. S. 48, 24 Sup. Ct. 598, 48 L. Ed. 870, the action was begun in the state court. The complaint expressly claimed a decree declaring that the combination agreement complained of was in violation of the laws of the state of Minnesota and of the United States. The defendant filed a petition for the removal of the cause to the United States Circuit Court upon the ground that the action was one arising under the laws of the United States. The removal was made, and counsel for both sides supposed the case was a removable one. Page 62 of 194 U. S., page 601 of 24 Sup. Ct. (48 L. Ed. 870). The real purpose of the suit (page 65 of 194 U. S., page 602 of 24 Sup. Ct. [48 L. Ed. 870]) was to annul the combination agreement upon the ground that it was in violation alike of the laws of Minnesota and of the anti-trust act of Congress (Act July 2, 1890, c. 647, 26 Stat. 290 [U. S. Comp. St. 1901, p. 3200]). The court, after showing that if the acts complained of only violated the laws of Minnesota it could not be said that the action was one arising under the Constitution or laws of the United States, through Mr. Justice Harlan at pages 65, 66, of 194 U. S., at page 602 of 24 Sup. Ct. (48 L. Ed. 870), said:

"The contention, however, is that a case arising under the laws of the United States was presented by the allegation in the complaint that the combination and consolidation between the Great Northern and Northern Pacific Railway Companies and their control of their affairs and operations by the Northern Securities Company were also in violation of the anti-trust act of

Congress of July 2, 1890. An allegation in a complaint filed in a Circuit Court of the United States may, indeed, in a sense, confer jurisdiction to determine whether the case is of the class of which the court may properly take cognizance for purposes of a final decree on the merits. Newburyport Water Co. v. Newburyport, 193 U. S. 561, 24 Sup. Ct. 553, 48 L. Ed. 795, and Pacific Electric Ry. Co. v. Los Angeles, 194 U. S. 112, 24 Sup. Ct. 586, 48 L. Ed. 896 (decided at present term). But if, notwithstanding such an allegation, the court finds, at any time, that the case does not really and substantially involve a dispute or controversy within its jurisdiction, then, by the express command of the act of 1875, its duty is to proceed no further. That is manifest from the fifth section of that act, which provides: 'That if, in any suit commenced in a Circuit Court or removed from a state court to a Circuit Court of the United States, it shall appear to the satisfaction of said Circuit Court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the said Circuit Court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed as justice may require, and shall make such order as to costs as shall be just.' 18 Stat. 470. That provision has not been superseded by any subsequent legislation."

And after further discussion the court (pages 72, 73, of 194 U. S., page 605 of 24 Sup. Ct. [48 L. Ed. 870]) said:

"For the reasons stated, we are of opinion that the suit does not—to use the words of the act of 1875—really and substantially involve a dispute or controversy within the jurisdiction of the Circuit Court for the purposes of a final decree. Western Union Tel. Co. v. Ann Arbor R. R. Co., 178 U. S. 239, 243, 20 Sup. Ct. 867, 44 L. Ed. 1052. That being the case, the Circuit Court, following the mandate of the statute, should not have proceeded therein, but should have remanded the cause to the state court."

But it is contended for the defendants that this case should be governed by other authorities. One of these is Mastin v. Chicago, etc., Ry. (C. C.) 123 Fed. 827, where Judge Philips, of the Western district of Missouri, upheld the removal of an action to recover damages alleged to have been sustained by reason of the shipment by defendant of diseased cattle into a state from a territory in violation of a law of the United States and also of the laws of the state and of the territory. In his opinion in that case, Judge Philips cited section 113 of Black's Dillon on Removal of Causes, where the rule was stated to be that:

"It is no obstacle to the removal of a cause as one arising under the Constitution and laws of the United States that it may involve other questions which are not of a federal character," etc.

The defendants also rely on the case of Nichols v. C. & O. R. R. Co., 105 S. W. 481, 32 Ky. Law Rep. 270, 17 L. R. A. (N. S.) 861, where the Court of Appeals of Kentucky, speaking through Judge Barker, held that a cause can be removed to the federal court where relief is claimed under the general law, and also under the provisions of the act of Congress known as the "Safety Appliance Act."

The defendants also cite the cases of Schlemmer v. Buffalo, etc., Ry. Co., 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681, and Ill. Cen. R. R. Co. v. Jones, 118 Ky. 158, 80 S. W. 484, but neither of them seems to throw any light on the question now under consideration.

169 F.—11

We do not take issue with any case or authority which holds that a cause may be removed to the federal court where the pleading of the plaintiff therein shows upon statutes therein pleaded that there is a valid claim to relief alike upon federal and upon state laws, for then there is a case which in at least one aspect really and substantially involves a dispute or controversy as to the effect or construction of the Constitution or laws of the United States. What we are endeavoring to ascertain is whether the plaintiff's petition in this action shows such a state of case under such laws.

Under the Kentucky practice (to which section 914 of the Revised Statutes [U. S. Comp. St. 1901, p. 684] requires this court to conform in suits at law) it was not essential for the plaintiff to do more than state in general terms that the death of his intestate was caused by the negligence of the defendants. A specification of the details of the acts constituting the negligence was unnecessary. L. & N. R. R. Co. v. Wolfe, 80 Ky. 84; Chesapeake & O. Ry. Co. v. Dixon, 104 Ky. 608, 47 S. W. 615; Chesapeake & O. Ry. Co. v. Dixon, 179 U. S. 139, 21 Sup. Ct. 67, 45 L. Ed. 121. Under a pleading of that character, testimony showing a failure to observe the requirements of any federal or state statute, or any federal, state, or municipal regulation, would doubtless be admissible as tending to prove negligence, provided such statute or regulation was one which, properly construed, embraced or was applicable to the case stated by the plaintiff. The state courts as well as the federal courts must take judicial notice of the laws of the United States, and for some purposes judicial notice will be taken of executive regulations. Caha v. United States, 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415. Though it was therefore unnecessary to do so, the plaintiff in fact did plead certain specified statutes and regulations, and we can conceive of no reason therefor except that he either desired to base a right to relief upon them, or to specify the particulars and details of the negligence charged against the defendants. But whatever his motive, inasmuch as his averments respecting certain provisions of the laws of the United States and certain executive regulations are elaborately set out in his petition, we must follow the example of the Supreme Court in the Northern Securities Company Case, and by a process of elimination ascertain whether there is or can be a real or substantial controversy or dispute involved as to the effect or construction either of the federal statutes or of the executive rules and regulations specified in plaintiff's petition; our task, of course, being limited to them. If such real dispute is involved, the removal can be sustained; but if not, the case must be remanded.

Concerning rules and regulations made by executive officers under the authority of Congress, after careful consideration we have concluded that all of them which plaintiff relies upon, except those made under sections 4412 and 4413, should be entirely eliminated from consideration upon the ground that rules and regulations which are usually the modes prescribed for carrying into effect certain things directed by law to be done are not themselves "laws of the United States" within the meaning of that phrase in the removal act. In other words, we think that when Congress used that phrase it meant acts of Congress and

not executive rules and regulations, unless (as under sections 4412 and 4413) the recovery of damages was expressly authorized by statute for a disregard of the regulations made thereunder. We have not found any direct adjudication of this question, but in the case of United States v. Eaton, 144 U. S., at page 688, 12 Sup. Ct., at page 767, 36 L. Ed. 591, speaking through Mr. Justice Blatchford, the Supreme Court said:

"It would be a very dangerous principle to hold that a thing prescribed by the Commissioner of Internal Revenue as a needful regulation under the oleomargarine act, for carrying it into effect, could be considered as a thing required by law * * * in such manner as to become a criminal offense."

Equally, we think, it would be a dangerous and a licentious construction of the language of the removal act to say that an executive rule or regulation was a "law of the United States" within the meaning of that act, and for that reason we lay out of view all allegations as to executive rules and regulations, except as indicated, in considering the motion to remand. This, of course, also excludes from present consideration all averments of failure to comply with what such rules and regulations prescribe. As to the regulations made under section 4412, other considerations will eliminate them, as will be pointed out.

Taking up separately the statutory provisions referred to in plaintiff's petition, we find that direct reference is therein made:

First, to section 4412, Rev. St., which necessarily involves also section 4413. These sections are as follows:

"Sec. 4412. The board of supervising inspectors shall establish such regulations to be observed by all steam vessels in passing each other, as they shall from time to time deem necessary for safety; two printed copies of such regulations, signed by them, shall be furnished to each of such vessels, and shall at all times be kept posted up in conspicuous places in such vessels.

"Sec. 4413. Every pilot, engineer, mate, or master of any steam vessel who neglects or willfully refuses to observe the regulations established in pursuance of the preceding section, shall be liable to a penalty of fifty dollars, and for all damages sustained by any passenger, in his person or baggage, by such neglect or refusal."

It will be seen that section 4412 applies only to regulations to be observed by steam vessels in passing each other, and that section 4413 in express terms only authorizes the recovery of damages against such pilots, engineers, mates, and masters (but not against owners) as shall neglect or willfully refuse to observe such regulations, and gives a right to damages only to one who is a "passenger," but even as to passengers does not expressly authorize a recovery where death ensues. It in no way appears from plaintiff's petition that the defendant Johnson was either the pilot, engineer, mate, or master, who alone, being supposed to be in actual charge of the vessel, are within the language of these sections; and the petition also fails to show that plaintiff's intestate was a passenger upon either one of two steam vessels passing each other, so as to be within these sections. The deceased appears from the petition to have been a person asleep upon a raft which was tied up on one shore of Green river, and it does not appear that the raft was a steam vessel of any kind, nor that any precautions had been taken either by the deceased or those in charge of it to guard against danger.

If the plaintiff in any event could have had any right under these

sections, as actually presented, it can be said of his case, in the language of the Supreme Court in United States v. Perryman, 100 U. S. at page 238, 25 L. Ed. 645, that, "as the right is statutory, the claimant cannot recover unless he brings himself within the terms of the statute. This he has not done." As plaintiff's intestate was not a passenger, and especially not a passenger upon one of two steam vessels passing each other, his action cannot properly be said to arise under sections 4412 and 4413, nor under any regulations thereunder.

Second, to the act of Congress approved January 18, 1897, 29 Stat. 489, by which all vessels above 15 tons burden carrying passengers and propelled by gas, fluid, naphtha, or electric motors, are made subject to the provisions of section 4426 of the Revised Statutes relating to inspections of hulls and boilers, and requiring engineers and pilots, and by which also all vessels so propelled, without regard to tonnage, are made subject to section 4412 and to so much of sections 4233 and 4234 as the board of supervising inspectors shall deem applicable and practicable for such navigation. Inasmuch as all of these provisions, unless it be those embraced in section 4233, Rev. St., to which we shall allude further along, relate to vessels propelled by gas, fluid, naphtha, or electric motors, and to regulations making certain provisions applicable where practicable, they can have no application to this case, for it is nowhere claimed that the Samuel was in any wise propelled by either gas, fluid, naphtha, or electric motors. On the contrary, it is always in the plaintiff's petition spoken of as a steamboat, and such it doubtless was, as plaintiff's petition otherwise shows. Besides, any rules or regulations made by the board of supervising inspectors under the last clause of this act, whereby the board might endeavor to make section 4233 "applicable" where "practicable," are not parts of the act, and, as we have seen, are not laws of the United States within the meaning of the removal act.

Third, to section 4233 of the Revised Statutes, plaintiff's allegations as to which are as follows, viz.:

"That by the Revised Statutes of the United States, section 4233, steam vessels, when towing other vessels are required to carry two bright white masthead lights vertically in addition to their side lights, so as to distinguish them from other vessels, which masthead lights were required to be of such character as to be visible on a dark night with a clear atmosphere at a distance of at least five miles, and so constructed as to show a uniform and unbroken light over an arc of the horizon of 20 points of the compass."

The plaintiff then avers, among other things not relevant to this section, that the defendant negligently failed, on the occasion referred to, to carry two bright, white masthead lights of the description and power required by the section. These averments have required the court to inquire into the origin as well as the scope of section 4233, in order to ascertain whether that law of the United States imposed any duty upon the defendants out of a neglect of which plaintiff's cause of action could arise. The section as it now appears is a revision of Act April 29, 1864, 13 Stat. 58, c. 69 (U. S. Comp. St. 1901, p. 2893), entitled "An act fixing rules and regulations for preventing collisions on the water." The act expressly related to "steamships" instead of "steam vessels" as provided in the revision, but otherwise, so far as the pending question

is concerned, the revision is substantially the same as the act. Section 4233, like the act, opens with the provision that:

"The following rules for preventing collisions on the water shall be followed in the navigation of vessels of the navy and of the mercantile marine of the United States."

The fourth of the rules thus enacted into law by Congress contains the provisions as to masthead lights, etc., upon which plaintiff has based the allegations of the petition above copied. It is obvious, from the portion of the section above given, that it was intended to apply only to the vessels of the "navy and of the mercantile marine of the United States." The rules therein prescribed, and which are relied upon by the plaintiff in this connection, themselves inherently show that they were intended for the wide waters of the seas and for the ships that sail them. Of course, the Samuel did not belong to the "navy of the United States" within the meaning of the section, and we have been at pains to ascertain whether within that meaning it belonged to the "mercantile marine of the United States." We have not been able to find an adjudicated definition of the phrase, but in the Century Dictionary this is found: "Merchant service, the mercantile marine; the business of commerce at sea." As the dominant word in the phrase is "marine," we think this definition is correct, and, considering it in connection with all the language of section 4233, we have concluded that the latter does not, and that it was by no means intended that it should, embrace a steamboat on small inland waters like Green river. It would be difficult for two of the largest possible masthead lights to illuminate a five-mile space of the required arc amidst the forests and hills through which our little streams usually wind.

Upon these considerations we conclude:

First. That as section 241 of the state Constitution was ordained for the express purpose of authorizing the recovery of damages by a personal representative for the negligent killing of his decedent, this action is one arising under the Constitution of Kentucky.

Second. That excepting those made under sections 4412 and 4413 of the Revised Statutes, which provide in express terms for the recovery of damages in certain cases, none of the executive rules or regulations pleaded by the plaintiff are "laws of the United States," within the true intent and meaning of the language of the removal act in respect to actions arising under the laws of the United States.

Third. That as the provisions of the laws of the United States, viz., sections 4412 (and the rules and regulations made thereunder), 4413, and 4233, Rev. St. and Act Jan. 18, 1897, pleaded by the plaintiff in his petition, do not embrace and are not applicable to the case stated by the plaintiff—that is to say, to the case of a person injured on a floating collection of logs, which is what a raft is—this action cannot properly be said to be one arising under the laws of the United States.

Fourth. That there is, therefore, no real or substantial dispute involved in this suit as to the effect or construction of any of the laws of the United States referred to in plaintiff's petition; and, consequently,

Fifth. That this court has not jurisdiction of the case, and did not lawfully acquire it by the removal.

The motion to remand it to the state court must be sustained.