## UNITED STATES v. PERRYMAN.

1. An Indian, whose property within the Indian country is stolen by a negro, is not entitled to any payment therefor out of the treasury of the United States.
2. The legislation touching the liability of the United States for the property of friendly Indians which is taken, injured, or destroyed, examined.

APPEAL from the Court of Claims.

The facts are stated in the opinion of the court.

*Mr. Assistant Attorney-General Smith* for the United States.
*Mr. Robert S. Davis, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This suit was brought to enforce an alleged liability of the United States, under sects. 2154 and 2155 of the Revised Statutes, to pay the value of twenty-three head of beef cattle, stolen from the claimant, a friendly Indian, within the Indian country.

These sections are as follows : —

" SECT. 2154. Whenever, in the commission, by a white person, of any crime, offence, or misdemeanor within the Indian country, the property of any friendly Indian is taken, injured, or destroyed, and a conviction is had for such crime, offence, or misdemeanor, the person so convicted shall be sentenced to pay to such friendly Indian to whom the property may belong, or whose person may be injured, a sum equal to twice the just value of the property so taken, injured, or destroyed.

" SECT. 2155. If such offender shall be unable to pay a sum at least equal to the just value or amount, whatever such payment shall fall short of the same shall be paid out of the treasury of the United States. If such offender cannot be apprehended and brought to trial, the amount of such property shall be paid out of the treasury. But no Indian shall be entitled to any payment out of the treasury of the United States, for any such property, if he, or any of the nation to which he belongs, have sought private revenge, or have attempted to obtain satisfaction by any force or violence."

This is a substantial reproduction of sect. 16 of the act entitled "An Act to regulate trade and intercourse with the

Indian tribes, and to preserve peace on the frontiers," approved June 30, 1834 (4 Stat. 731), and which continued in force until the Revised Statutes went into effect.

The facts are briefly these: On the 18th of December, 1874, Henry Carter, a negro, and not an Indian, and John Conner, a white man, stole from the claimant, a friendly Creek Indian, in the Indian country, the cattle sued for. At the May Term, 1875, of the District Court of the United States for the Western District of Arkansas, both Carter and Conner were indicted for the larceny. Afterwards, a *nolle prosequi* was entered as to Conner, and he was discharged ; but Carter was tried, found guilty, and sentenced to pay to the claimant double the value of the cattle stolen, and be imprisoned in the penitentiary. He being unable to pay the judgment, this suit was brought. The Court of Claims was divided on the question whether the United States were liable in such a case for a theft committed by a negro, and, in order to allow an appeal, gave judgment *pro forma* for the claimant. From this judgment the United States appealed.

The single question we have to consider is, whether the United States are liable under the statute to the claimant, since the only offender who has been convicted and sentenced to pay for the property stolen was a negro, and not a white person. The term " white person," in the Revised Statutes, must be given the same meaning it had in the original act of 1834. Congress has nowhere manifested an intention of using it in a different sense. While the negro, under the operation of the constitutional amendments, has been endowed with certain civil and political rights which he did not have in 1834, he is no more, in fact, a white person now than he was then. He is a citizen of the United States, and free. No State can abridge his privileges and immunities as a citizen, or deny him the equal protection of the laws ; but his race and color are the same, and he is no more included now within the descriptive term of a white person, than he always has been. If, then, this term was used in the act of 1834 to exclude the liability of the United States for the depredations of the negroes in the Indian country, it must be considered as having been so used in the Revised Statutes. There may be no good reason for

restricting any longer this liability to acts of whites; but until Congress sees fit to change the statute in this particular, the courts are not at liberty to disregard the law as it is left to stand. The question is not as to the effect of the constitutional amendments on an existing statute affecting the civil or political rights of the negro himself, but as to the meaning of the words " white person," when used ·as words of' description in a statute making the United States liable for the acts of the persons described. No rights of the negro himself, as a citizen, or otherwise, are in any way involved.

It is contended, however, that the term " white person," as here used, means no more than " not an Indian; " in other words, that the intention of Congress was to make the United States liable in the way indicated for all injuries to the property of friendly Indians by persons engaged in crime within the Indian Territory who were not themselves Indians. Such, we think, is not the true construction of the statute. The act of 1834 was not the first statute upon this subject. On the 19th of May, 1796, an act was passed " to regulate trade and intercourse with the Indian tribes and to preserve peace on the frontiers." 1 Stat. 469. In this statute various provisions were made in respect to " any citizen of, or other person resident in, the United States or either of the territorial districts of the United States ; " and the liability of the United States for depredations, &c., was extended to certain specified acts of all such persons. This statute expired by its own limitation in 1799, and on the 3d of March of that year another was passed with similar provisions, which continued in force for three years. Id. 743. On the 30th of March, 1802, a permanent statute on the same subject was passed (2 id. 139), making much the same general provisions. In this also various penalties were prescribed for certain acts by " any citizen of, or other person resident in, the United States, or either of the territorial districts of the United States." · The liability of the United States for injuries to the property of friendly Indians was extended to the enumerated acts of all " such citizens or · other persons," the same as in the statute of 1796. This continued in force until that of 1834, *supra*, was passed. In the statute of 1834 the phrase " any citizen or other person resid-

ing within the United States or the territory thereof " is retained in all the provisions for penalties, &c., except in sect. 16, which was evidently intended to take the place of sect. 4 in the statute of 1802, providing for the liability of the United States for injuries by certain persons to the property of friendly Indians. In that section (16) the words " a white person " were substituted for " any such citizen or other person ; " that is to say, " any citizen or other person resident of the United States," &c. It is impossible to believe that this was not done for a purpose. Had the phraseology throughout the entire statute been correspondingly changed, the question might have been different ; but, confined as the change was to this particular section, we cannot but think that Congress meant just what the language used conveys to the popular mind. The Cherokee nation, which had given the State of Georgia so much trouble, was about to remove to its new home west of the Mississippi. It was, no doubt, thought if the United States made themselves liable only for such depredations as were committed by the whites, these and other Indians would be less likely to tolerate fugitive blacks in their country. Hence, as a means of preventing the escape of slaves, the change in the law was made. Although the reason of the change no longer exists, Congress has seen fit to keep the law as it was. As the right is statutory, the claimant cannot recover unless he brings himself within the terms of the statute. That he has not done.

The judgment of the Court of Claims will be reversed, and the cause remanded with instructions to dismiss the petition ; and it is                                          *So ordered.*