## FORTY-THREE CASES COGNAC BRANDY, etc.

*(Circuit Court, D. Minnesota.   December Term, 1882.)*

1. INDIAN COUNTRY.

A particular portion of the public domain upon which an Indian tribe has been suffered long to remain, while other portions have been opened to settlement, or set apart particularly for Indian occupation, does not constitute such tract an Indian reservation.

2. SAME.

The fact that a tract of country has sometimes been referred to in treaties and official reports as the Red Lake Reservation, is not sufficient to authorize the court, in a *quasi* criminal case, to declare it to be such.

Error to the District Court.   On motion for rehearing.

After the announcement of the opinion of the court in this case,* counsel for the government asked a further hearing upon the question whether the *locus in quo* is within an Indian Reservation, and the court ordered further argument upon that question, which was had at the December term, 1882.

*C. K. Davis*, for plaintiff in error.

*C. A. Congdon*, Asst. U. S. Atty., for the United States.

McCRARY, C. J.   An Indian reservation is a part of the public domain set apart by proper authority for the use and occupation of a tribe or tribes of Indians.   It may be set apart by an act of congress, by treaty, or by executive order; I do not think an Indian reservation can be established by custom or prescription.   The fact that a particu-

*See 11 FED. REP. 47.

lar tribe or band of Indians have for a long time occupied a particular tract of country does not constitute such tract an Indian reservation. Originally, all of the public domain was occupied by the Indians, and the reservation policy was adopted with a view of locating them in certain districts, and opening the remainder of the public land for white settlement. It cannot, therefore, be said that a particular portion of the public domain, upon which an Indian tribe has been suffered long to remain, while other portions have been open to settlement, or set apart specifically for Indian occupation, constitutes such tract an Indian reservation. It simply retains the character it had at the beginning, and can only be correctly designated as a tract of public land to which the Indian title has not been extinguished.

Such is the character of the *locus in quo* in this case. It comes clearly within the description of "Indian country" as defined by the act of 1834, to-wit, "territory to which the Indian title has not been extinguished." If this definition were still in force, it would exactly designate the place where the seizure was made; but, as we have heretofore held, it was repealed by the enactment of the Revised Statutes. To hold it still to be Indian country would be to give no effect to the repeal. The fact that the tract of country in question has been sometimes referred to in treaties and official reports as the "Red Lake Indian Reservation," is not sufficient to authorize the court, in a *quasi* criminal case, to declare it to be such.

The motion for rehearing is overruled.

---

This case accomplishes a most anomalous result. The *locus in quo* of the seizure is the unceded country in the northern part of Minnesota, popularly called the Red Lake Indian Reservation, and occupied exclusively by the Red Lake Indians, a partially-civilized tribe. In 1863 these Indians, by treaty, extinguished their title to all territory save that in question. 13 St. at Large, 668. A part of the territory so ceded comprises the greater part of the four counties in northwestern Minnesota north of the Wild Rice river. These counties are thickly settled, are traversed by railroads and dotted with thriving villages. By article 7 of the treaty of 1863, it was provided that the laws prohibiting the introduction and sale of spirituous liquors in the Indian country should be in full force and effect throughout the country thereby ceded. It was held in *U. S. v. Forty-three Gallons of Whisky*, 93 U. S. 197, that this exclusion of spirituous liquor from the ceded territory was not only a valid but commendable exercise of the power to regulate commerce with the Indians; that article 7 was doubtless inserted through fear that the ceded lands, by reason of their proximity to the unceded lands, would be used to store liquors for sale to young men of the tribe occupying such unceded lands. But since

the principal case holds that the unceded territory is not Indian country, it follows that it is lawful to introduce liquor into the unceded territory, but unlawful to introduce it into the ceded territory, because it may thereby be the more easily introduced into the unceded territory.

INDIAN COUNTRY. This term was first used in the trade and intercourse acts in the act of July 22, 1790, (1 St. at Large, 137,) where it was undefined. It was used again without definition in the second trade and intercourse act, enacted March 1, 1793, (1 St. at Large, 329.) It was first defined in the third intercourse act (1 St. at Large, 469) to be the country west of an irregular line extending from the present site of Cleveland, Ohio, to the river St. Mary, Florida, (the then boundary fixed by various treaties with the several tribes and the government,) and this line was subject to variance, as subsequent treaties might vary the boundaries between the various tribes and the United States. This act having expired, it was re-enacted with the same definition March 3, 1799, (1 St. at Large, 743,) and again re-enacted, on its expiration, April 30, 1802, (2 St. at Large, 139.) Under this definition "territory purchased by the United States of the Indians, but frequented and inhabited exclusively by Indian tribes," is not Indian country. *American Fur Co.* v. *U. S.* 2 Pet. 368. This definition continued to June 30, 1834, when section 1 of the intercourse act, then enacted, (4 St. at Large, 729,) defined it to be "all that part of the United States west of the Mississippi and not within the states of Missouri and Louisiana, or the territory of Arkansas, and also that part of the United States east of the Mississippi river and not within any state to which the Indian title has not been extinguished." Under this definition the country described ceases to be Indian country as soon as the Indians part with their title, and without any further act of congress. *Bates* v. *Clark*, 95 U. S. 208. This definition continued until the enactment of the Revised Statutes, when it was repealed by section 5596, since the intercourse act is neither local nor temporary. The principal case reported, *Forty-three Gallons of Cognac Brandy*, 11 FED. REP. 47; *U. S.* v. *Leathers*, 6 Sawy. 17. But *contra*, that it is local, *U. S.* v. *Seveloff*, 2 Sawy. 314; *U. S.* v. *Tom*, 1 Or. 27; *Walters* v. *Campbell*, 4 Sawy. 123. And that it is not extended, *proprio vigore*, over after-acquired territory. *U. S.* v. *Joseph*, 94 U. S. 617.

It seems, from the principal case, that since the enactment of the Revised Statutes there is no Indian country, though an Indian reservation may be and is held to be all the Indian country there is, (*U. S.* v. *Leathers*, 6 Sawy. 17,) and is Indian country so as to give the United States courts in Dakota jurisdiction of murder thereon, (*U. S.* v. *Brave Bear*, 13 N. W. Rep. 565; *U. S.* v. *Knowlton*, Id. 573;) and the Indian reservations in the Indian territory are Indian country; (*U. S.* v. *Payne*, 2 McCrary, 289, [S. C. 8 FED. REP. 883;] and such reservation is assumed to be Indian country by the supreme court, (*U. S.* v. *Perryman*, 100 U. S. 235;) and so is a reservation in Colorado, (*U. S.* v. *McBratney*, 104 U. S. 621; *U. S.* v. *Berry*, 2 McCrary, 58, [S. C. 4 FED. REP. 779.] But if there is no statutory definition of Indian country, it would seem that, as regards the intercourse acts, no distinction could be drawn between unceded country rightfully occupied by Indian tribes, and Indian reservations so called, because (1) the aboriginal title of the Indian tribes to the unceded lands is that of occupancy alone, (*Cherokee Nation* v. *Georgia*, 5 Pet. 48,)

which is the same right that they have in the lands of their reservation, (*U. S.* v. *Cook*, 99 Wall. 591,) their reservation rights being simply a continuation of their aboriginal rights, (*New York Indians*, 5 Wall. 770; *Godfrey* v. *Beardsley*, 2 McLean, 416;) (2) the purpose and effect of the intercourse acts was to regulate trade and intercourse with Indian tribes which form distinct political communities, having territorial boundaries, and a right to all the and within such boundaries, (*Worcester* v. *State of Georgia*, 6 Pet. 557;) tribes which are governed by their own rules and traditions, with whom the government deals in their tribal character, and who hold their lands in common, with the right of occupancy only, (*U. S.* v. *Joseph*, 94 U. S. 617;) and therefore these intercourse acts seem to be as applicable to non-reservation tribal Indians, occupying unceded land, as to reservation Indians.

INDIAN RESERVATIONS, HOW CREATED. They are created by treaty, statute, or executive order, (*U. S.* v. *Leathers*, 6 Sawy. 17; *U. S.* v. *Payne*, 2 McCrary, 296; [S. C. 8 FED. REP. 883;]) and the principal case. No set form of words is necessary to create a reservation. It is enough if the words used are sufficient to indicate the purpose to reserve the land. *U. S.* v. *Payne, supra.* But *quære*, what words are sufficient to indicate such purpose. The *locus in quo* in the principal case was called in the treaty there construed a reservation, (section 6, 13 St. at Large, 668,) and was so called in a subsequent treaty, (13 St. at Large, 689,) and was so called by the supreme court when construing the treaty in question, (*U. S.* v. *Forty-three Gallons of Whisky*, 93 U. S. 197.)

JURISDICTION OVER INDIAN COUNTRY. Federal courts have no jurisdiction of crimes committed by a white man upon a white man in Indian country *within a state*, because such state has criminal jurisdiction over all white persons within its limits. *U. S.* v. *McBratney*, 104 U. S. 621; over-ruling on this point *U. S.* v. *Berry*, 2 McCrary, 58; [S. C. 4 FED. REP. 779.] But *contra*, if such country is not within a state. *U. S.* v. *Rogers*, 4 How. 572. But if the white man commits a crime upon an Indian, *e. g.*, steals his blanket, the federal courts have jurisdiction of the offense, though the reservation on which it is committed is within a state, because of the power to regulate intercourse between the Indian and the white man, even in a state, (*U. S.* v. *Bridleman*, 7 FED. REP. 894;) and under its power to regulate commerce with the Indians, the exclusion of liquor from Indian country within a state is constitutional, (*U. S.* v. *Forty-three Gallons of Whisky*, 93 U. S. 188.) A state court can punish an Indian who commits adultery with an Indian upon a reservation within a state. *State* v. *Doxtater*, 47 Wis. 278; [S. C. 2 N. W. REP. 436.] But the civil laws of the state do not extend to an Indian country within a state, (15 Minn. 369,) nor to Indians maintaining tribal relations. *U. S.* v. *Payne*, 4 Dill. 389.

* * *

See note in 11 FED. REP. 51.