Kenneth **COOSEWOON**; Loraine Mathews; Sherrill James Chasenah; Guy Ware; Trina Ware Stumblingbear; Vivan Ware; Pressley Ware; Cecilia McFarland; Marcie Davilla, Plaintiffs–Appellants,

v.

**MERIDIAN OIL COMPANY**, a Delaware corporation; United States of America, Defendants–Appellees.

No. 93–6011.

United States Court of Appeals,
Tenth Circuit.

May 25, 1994.

Jeffrey P. Southwick, Oklahoma City, OK, for plaintiffs-appellants.

Fred M. Buxton (J. Kevin Hayes and Margaret A. Swimmer with him on the brief), of Hall, Estill, Hardwick, Gable, Golden and Nelson, Tulsa, OK, for Meridian Oil.

Joan Pepin, Dept. of Justice (Myles E. Flint, Acting Asst. Atty. Gen., Joe Heaton, U.S. Atty., M. Kent Anderson, Asst. U.S. Atty., Oklahoma City, OK, David C. Shilton and Katherine L. Adams, Dept. of Justice, Environmental and Natural Resources Div., Howard Chalker and Beverly Ohline, Dept. of Interior, on the brief), for U.S.

Before ANDERSON and BALDOCK, Circuit Judges, and KANE, District Judge.*

BALDOCK, Circuit Judge.

Plaintiffs appeal the district court's Fed. R.Civ.P. 12(b)(6) dismissal of some of the claims and grant of summary judgment as to the remaining claims in their complaint. We have jurisdiction under 28 U.S.C. § 1291.

■ In 1977, Plaintiffs' predecessors in interest executed two oil and gas leases with Kirby Exploration Company ("lessee") on restricted Indian land in Caddo County, Oklahoma, reserving the right to receive a twenty percent royalty of proceeds derived from oil and gas production under the lease. Following the execution of the leases, the Oklahoma Corporation Commission proposed to include Plaintiffs' lease within a communitized unit,[1] and in March 1982, the Secretary of the Interior gave the required departmental approval of the communitization plan, see 25 C.F.R. §§ 1.4(b), 212.24(c) (requiring Secretary's approval of such plans). A gas well ("Iams well") was then drilled on the unit and completed in July 1983.

In 1985, the lessee designated Defendant Meridian Oil Company as the operator of the Iams well. The operating agreement required Meridian to act on the lessee's behalf in complying with the terms of the lease and applicable regulations. From 1982 before the time Meridian operated the well, to 1988, Plaintiffs did not receive royalty payments for gas produced under their lease. At some

---

* The Honorable John L. Kane, Jr., Senior United States District Judge for the District of Colorado, sitting by designation.

1. Unitization of oil and gas production "permit[s] the entire [oil and gas] field (or a substantial portion of it) to be operated as a single entity, without regard to surface boundary issues." *Norfolk Energy, Inc. v. Hodel,* 898 F.2d 1435, 1438 (9th Cir.1990) (quoting 6 H. Williams and C. Meyers, *Oil and Gas Law,* § 901, at 3–4). Once a unit is communitized, "operations conducted anywhere within the unit are deemed to occur on each lease within the communitized area and production anywhere within the unit is deemed to be produced from each tract within the unit." *Kenai Oil and Gas, Inc. v. United States Dept. of Int.,* 671 F.2d 383, 384 (10th Cir.1982).

point thereafter, Plaintiffs notified the Minerals Management Service ("MMS"), a government agency, of the nonpayment. MMS subsequently conducted two audits of Plaintiffs' leases which resulted in collection on Plaintiffs behalf of approximately $96,000 in royalties and interest due for the years 1982–88. Despite the MMS audits, Plaintiffs continued to have problems collecting royalty payments from Meridian for the years 1989 to 1991. Instead of seeking another audit from MMS, Plaintiffs filed the instant action on May 21, 1992 against the United States and Meridian, alleging ten causes of action.[2] In their complaint, Plaintiffs sought, *inter alia,* an order requiring the United States to institute lease cancellation proceedings and damages for Meridian's failure to timely pay royalties under the lease. Defendants filed motions for dismissal and summary judgment which the district court granted. This appeal followed.

### I.

■ Plaintiffs contend the district court erred in dismissing several counts of their complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. We review the sufficiency of a complaint de novo and will uphold a dismissal of a complaint only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief. *TV Communications Network v. Turner Network,* 964 F.2d 1022, 1024 (10th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 601, 121 L.Ed.2d 537 (1992). We must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir.1991).

### A.

■ Plaintiffs first argue the district court erred in dismissing Count I of the complaint, which sought an order requiring the United

States to cancel their oil and gas lease. The district court dismissed this count without prejudice for failure to exhaust administrative remedies.

Department of Interior regulations provide:

> A lease will be cancelled by the Secretary of the Interior for good cause upon application of the lessor or lessee, *or if at any time the Secretary is satisfied that the provisions of the lease or of any regulations heretofore or hereafter prescribed have been violated.*

25 C.F.R. § 212.23(a) (emphasis added). Plaintiffs concede they have failed to apply to the Secretary for lease cancellation. However, Plaintiffs argue that such an application was not required because they are seeking lease cancellation under the second clause of § 212.23(a). Under this provision, Plaintiffs contend that the district court may determine whether the Secretary "is satisfied" the lease has been violated, and if so, may order lease cancellation even though no application was filed. We disagree.

■ Under the doctrine of exhaustion of administrative remedies, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969) (quoting *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–464, 82 L.Ed. 638 (1938)). A party must exhaust administrative remedies when a statute or agency rule dictates that exhaustion is required. *See White Mountain Apache Tribe v. Hodel,* 840 F.2d 675, 677 (9th Cir.1988). Under Department of Interior regulations, if an agency decision is subject to appeal within the agency, a party must appeal the decision to the highest authority within the agency before judicial review is available. *See* 25 C.F.R. § 2.6(a);[3] *see also Western Shoshone*

---

2. Following the filing of Plaintiffs' lawsuit, the government began a third audit of Plaintiffs' leases, which according to the government, is ongoing.

3. 25 C.F.R. § 2.6(a) provides:

No decision, which at the time of its rendition is subject to appeal to a superior authority in the Department, shall be considered final so as to constitute Departmental action subject to judicial review under 5 U.S.C. § 704, unless when an appeal is filed the official to whom the appeal is

*Business Council v. Babbitt,* 1 F.3d 1052, 1055 (10th Cir.1993) (administrative exhaustion completed under § 2.6(a) when party appeals to highest authority within agency).

■ Consistent with the exhaustion requirement, the Secretary has instituted an administrative procedure by which a party may challenge the Secretary's inaction concerning a particular issue. Under this procedure, a party may request that the Secretary take action on a particular matter, *see* 25 C.F.R. § 2.8(a), and the Secretary must respond within ten days of receipt of the request by either issuing a decision on the merits of the request or establishing a later date by which a decision shall be made, *see id.* § 2.8(b). If no decision is rendered, the Secretary's inaction becomes final for purposes of judicial review because the Secretary is the highest authority within the agency. *See id.* § 2.8(b); *see also* 25 C.F.R. § 2.6(a).

In the instant case, Plaintiffs' claim there is evidence that the Secretary is satisfied that Meridian as lessee violated the lease. Consequently, Plaintiffs argue the court should order cancellation of the lease because the Secretary has failed to do so. Plaintiffs' complaint is with the Secretary's failure to act to cancel the lease. The Department of Interior has provided Plaintiffs with an administrative remedy concerning this inaction regarding lease cancellation; as a result, we hold Plaintiffs must exhaust this remedy before seeking judicial review. *See* 25 C.F.R. § 2.6(a). Thus, the district court properly dismissed Plaintiffs' lease cancellation claim for failure to exhaust.

### B.

■ Plaintiffs next argue the district court erred in dismissing Count II of their complaint seeking lease forfeiture pursuant to 30 U.S.C. § 188. Section 188 is part of the Mineral Lands Leasing Act of 1920, 30 U.S.C. §§ 181–194, which provides for the lease of lands owned by the United States for purposes of mineral development, *see* 30 U.S.C. § 181. Section 188 is applicable only to leases issued pursuant to the Act. 30 U.S.C. § 188. In the instant case, the leases in question were not issued pursuant to the Mineral Lands Leasing Act nor do they cover lands owned by the United States. Thus, § 188 is inapplicable to Plaintiffs' claim for lease forfeiture, and the district court did not err in dismissing Count II of Plaintiffs' complaint.[4]

### C.

Plaintiffs next contend the district court erred in dismissing Count V of their complaint which alleged Meridian committed negligence per se through its alleged violation of 18 U.S.C. § 1160. The district court dismissed Plaintiffs' claim because "none of Plaintiffs' claims sound in negligence."

■ The central feature of a negligence per se claim is a statute or ordinance which prevents a party from engaging in certain conduct. *See, e.g., Ohio Casualty Ins. Co. v. Todd,* 813 P.2d 508, 510 (Okla. 1991) (negligence per se claim predicated on statute which prevented sale of alcohol to intoxicated persons); *Hampton v. Hammons,* 743 P.2d 1053, 1055 (Okla.1987) (negligence per se claim predicated on statute preventing possession of vicious animals within city limits); *Boyles v. Oklahoma Natural Gas Co.,* 619 P.2d 613, 618 n. 14 (Okla. 1980) (in negligence per se action, statute in question prevented gas companies from turning on a gas system unless open-fitted valves were closed). When a party engages in the statute's proscribed conduct, the violation constitutes negligence per se if (1) a party is injured by the statutory violation, (2) the injury was of the type intended to be prevented by the statute, and (3) the injured party was one of the class meant to be

---

made determines ... that the decision be made effective immediately.

4. Despite the inapplicability of 30 U.S.C. § 188 to Plaintiffs' claim, Plaintiffs now contend they are entitled to forfeiture of the lease pursuant to the common law. Because Plaintiffs' complaint

failed to raise this issue, we will not consider it on appeal. *See Doyle v. Oklahoma Bar Ass'n,* 998 F.2d 1559, 1566 (10th Cir.1993) (in reviewing dismissal of a complaint, appellate court need only consider issues raised in complaint rather than new issues raised on appeal).

protected by the statute. *See Ohio Casualty,* 813 P.2d at 510.

18 U.S.C. § 1160 provides:

Whenever a white person, in the commission of an offense within the Indian country takes, injures or destroys the property of any friendly Indian the judgment of conviction *shall include a sentence* that the defendant pay to the Indian owner a sum equal to twice the just value of the property so taken, injured, or destroyed.

(emphasis added). Plaintiffs argue § 1160 provides a proper basis for his negligence per se claim. We disagree.

By its terms, § 1160 is a sentencing provision, establishing conditions under which a sentencing court must order double restitution as part of a defendant's sentence. *See, e.g., United States v. Perryman,* 100 U.S. 235, 236, 25 L.Ed. 645 (1879) (defendant was convicted of committing larceny on Indian territory and ordered to make restitution under § 1160). Section 1160 does not proscribe conduct but instead enhances the sentence of one who has engaged in conduct proscribed by other criminal statutes. Because a negligence per se claim must be based on a statute that prohibits certain conduct, and § 1160 does not do so, we conclude § 1160 provides an improper basis for Plaintiffs' negligence per se claim. Thus, the district court did not err in dismissing Count V of Plaintiffs' complaint.

### D.

 Plaintiffs also contend the district court erred in dismissing their claim for economic waste. In Count VI of their complaint, Plaintiffs alleged Meridian committed economic waste by failing to pay proper value for gas produced and sold under the lease, in violation of 30 U.S.C. § 1756 and Oklahoma Corporation Commission rules. The district court dismissed Plaintiffs' claim, holding Commission rules do not regulate economic waste, but apparently failed to address Plaintiffs' § 1756 claim.

On appeal, Plaintiffs challenge the district court's dismissal only by claiming Meridian's alleged violation of § 1756 constituted negligence per se. We decline to address this argument, however, because Plaintiffs did not base their § 1756 cause of action below on negligence per se. Plaintiffs have therefore waived this argument. *See Doyle,* 998 F.2d at 1566.

### E.

 Plaintiffs next challenge the district court's dismissal of Count VII of their complaint which alleged Meridian committed negligence per se through violations of 30 U.S.C. § 1719(c)(1), (d)(1) and (3) of the Federal Oil and Gas Royalty Management Act ("FOGRMA"), 30 U.S.C. § 1701–1757. These subsections empower the Secretary of Interior to assess civil penalties for certain violations of FOGRMA.

In their complaint, Plaintiffs merely allege and request damages which are consistent with the prescribed penalty amounts set forth in § 1719. Even if Meridian violated § 1719, such a violation does not indicate that Plaintiffs suffered damages equivalent to the civil penalty amounts set forth in § 1719. Because Plaintiffs have failed to allege any facts to indicate that Meridian's alleged negligence resulted in damages to them equivalent to the prescribed amounts set forth in § 1719, the district court did not err in dismissing Count VII of Plaintiff's complaint.

### F.

Plaintiffs next contend the district court erred in dismissing Counts VIII and IX of their complaint. In these counts, Plaintiffs alleged Meridian's violation of Okla.Stat.Ann. tit. 52, §§ 570.10 (formerly 540), and 581.10 (formerly 547) (Supp.1994) constituted negligence per se. Section 570.10 provides for the recovery of twelve percent interest compounded annually, on the late payment of proceeds from the sale of oil or gas production. *See id.* § 570.10D.1. Section 581.10 allows any owner who is injured by an act "in violation of the Natural Gas Market Sharing Act [to] sue in the courts of [Oklahoma] and recover actual damages so sustained." *See id.* § 581.10A. Pursuant to these provisions, Plaintiffs contend they are entitled to bring an action for interest payments due to Meridian's failure to timely pay royalties under

the lease. The district court determined Plaintiffs' cause of action was preempted by FOGRMA.

■ Congress has broad power to regulate Indian affairs under the Indian Commerce Clause, Art. 1, § 8, cl. 3. *See White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 140, 142, 100 S.Ct. 2578, 2582, 2583, 65 L.Ed.2d 665 (1980). This exclusive authority and the quasi-sovereign status of Indian tribes

> "have given rise to two independent but related barriers to the assertion of state regulatory authority over tribal reservations and members. First, the exercise of such authority *may be pre-empted by federal law.* Second, it may unlawfully infringe 'on the right of reservation Indians to make their own laws and be ruled by them.' [E]ither [barrier], standing alone, can be a sufficient basis for holding state law inapplicable to activity undertaken on the reservation or by tribal members."

*Id.* at 142–43, 100 S.Ct. at 2583 (citations omitted) (emphasis added) (quoting *Williams v. Lee,* 358 U.S. 217, 220, 79 S.Ct. 269, 270–71, 3 L.Ed.2d 251 (1959)).

■ The preemption analysis applies a set of principles unique to Indian cases and preemption does not require an express congressional statement to that effect. *See id.* 448 U.S. at 143–44, 100 S.Ct. at 2583–84. When a party seeks to apply state law to the conduct of non-Indians engaging in activity on Indian land, the Supreme Court has instructed courts to engage in "a particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether in the specific context, the exercise of state authority would violate federal law." *Id.* at 145, 100 S.Ct. at 2584. Such an inquiry focuses on an examination of "the language of the relevant federal treaties and statutes in terms of both the broad policies that underlie them and the notions of sovereignty that have developed from historical traditions of tribal independence." *Id.* at 144–45, 100 S.Ct. at 2584. "State jurisdiction is preempted by the operation of federal law if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the state interests at stake are sufficient to justify the [application of the state law]." *New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 334, 103 S.Ct. 2378, 2386, 76 L.Ed.2d 611 (1983). Applying these principles, we note that tribal interests are not implicated as a result of Plaintiffs' lawsuit because Plaintiffs' are suing as individual Indian lessors. Therefore, we must determine whether the application of state law in this case interferes or is incompatible with federal law. *See id.*

■ The "United States has exercised its supervisory authority over oil and gas leases [on allotted Indian land] in considerable detail." *Poafpybitty v. Skelly Oil Co.,* 390 U.S. 365, 372–73, 88 S.Ct. 982, 986, 19 L.Ed.2d 1238 (1968). For example, under the Indian Mineral Leasing Act of 1938, 25 U.S.C. §§ 396a–396g (1976), the Secretary of Interior must approve leases on Indian lands, *id.* § 396a, require satisfactory performance bonds of lessees, *id.* § 396c, and oversee all operations under leases, *id.* § 396d. In addition the Secretary has established a comprehensive royalty management system pursuant to FOGRMA, which was enacted in part to allow the "Secretary [to] initiate procedures to improve methods of accounting for [ ] royalties and payments" regarding Indian leases. 30 U.S.C. § 1701(a)(3). These regulations cover a wide variety of matters including, *inter alia,* the length of leases, 25 C.F.R. § 212.12, payment methods for royalties, *id.* § 212.14, assignment of leases, *id.* § 212.22, cancellation of leases, *id.* § 212.23, inspection of lease operations, *id.* § 212.25, the valuation of oil and gas produced under a lease, 30 C.F.R. § 206.152, the method of royalty payment, and applicable interest rates calculated on late royalty payments, *id.* §§ 218.50–218.55. These regulations concerning leases on Indian lands are "comprehensive, giving wide powers to [the Secretary] as to all aspects of the leasing arrangement." *Pawnee v. United States,* 830 F.2d 187, 190 (Fed.Cir.1987), *cert. denied,* 486 U.S. 1032, 108 S.Ct. 2014, 100 L.Ed.2d 602 (1988).

Within this comprehensive federal regulation concerning Indian oil and gas leases, several conflicts exist between federal and Oklahoma law governing the payment of royalties and collection of interest on unpaid

royalties. Federal law provides that royalty payments must be made "at the end of the month following the month during which the oil and gas is produced," 30 C.F.R. § 218.-50(a), while Oklahoma law provides for payment within sixty days following the sale of oil or gas produced under the lease, *see* Okla.Stat.Ann. tit. 52, § 570.10B (Supp.1994). Moreover, unpaid and underpaid royalties on allotted Indian leases are assessed under federal law with an interest charge consisting of the federal short-term interest rate plus three percentage points, *see* 25 C.F.R. § 218.55; 26 U.S.C. § 6621(a)(2), while Oklahoma law provides for an interest rate ranging from six to twelve percent, *see* Okla.Stat. Ann. tit. 52, § 570.10D (Supp.1994). Plaintiffs argue these conflicts should not result in preemption of their cause of action. We disagree.

Congress has vested the Secretary of Interior with authority to implement a royalty management system concerning the "collection ... [of] oil and gas royalties, interest, fines, penalties [and] fees." 30 U.S.C. § 1711(a). This management system is designed to "ensure the prompt and proper collection and disbursement of oil and gas revenues owed to ... Indian lessors." 30 U.S.C. § 1701(b)(3). In order to ensure the collection of royalties under an Indian oil or gas lease, the Secretary has promulgated regulations concerning the method and timing of royalty payments and applicable interest rates calculated on late royalty payments. *See* 30 C.F.R. §§ 218.50–218.55. Operators of oil and gas wells, such as Meridian must comply with these regulations, *see* 30 U.S.C. § 1712(a) (requiring lessees and operators to make royalty or other payments under a lease in the manner specified by the Secretary), and must pay interest on unpaid royalties at the rate calculated under federal law. *See* 30 U.S.C. § 1721. Plaintiffs' attempt to require Meridian to comply with state law

concerning interest on unpaid royalties is incompatible and interferes with the Secretary's interests in enforcing its provisions concerning the late payment of royalties. Additionally, Plaintiffs have failed to identify any state interests which would justify the application of Oklahoma law in this case.

We therefore agree with the district court that given the pervasive federal regulation concerning Indian oil and gas leases which protects Indian interests, and lack any state interests justifying the application of Oklahoma law, Plaintiffs' state law cause of action for interest under § 570.10 and § 581.10 is preempted. Thus, the district court did not err in dismissing Counts VIII and IX of Plaintiffs' complaint.[5]

## G.

Plaintiffs next challenge the district court's dismissal of Count X of their complaint which alleged Meridian failed to submit a non-arms-length contract to the Minerals Management Service ("MMS") for approval. Plaintiffs contend Meridian engaged in a non-arms-length transaction by selling gas to an affiliate and was thereby required to seek approval of the transaction pursuant to 30 C.F.R. § 206.152(e)(3). Section 206.-152(e)(3) provides in pertinent part:

A lessee shall notify MMS if it has determined value [of gas sold under a non-arms length contract] pursuant to paragraph (c)(2) or (c)(3) of this section. The notification shall be by letter ... [and] identify the valuation method to be used and contain a brief description of the procedure to be followed.

The district court held that Plaintiffs could not maintain a private cause of action for a violation of § 206.152(e)(3).

Section 206.152(e)(3) does not explicitly provide for a private cause of action for a

---

5. Plaintiffs contend that a finding of preemption would violate precepts established by the Supreme Court in *Poafpybitty*, 390 U.S. at 372–73, 88 S.Ct. at 986. In *Poafpybitty*, the Supreme Court held that Indians were not precluded from bringing a breach of contract action under oil and gas leases even though the Secretary of Interior substantially regulated the leases. *See id.* at 376, 88 S.Ct. at 987–88. Plaintiffs argue

that *Poafpybitty* entitles them to bring a cause of action for interest under Oklahoma law.

Plaintiffs' reliance on *Poafpybitty* is misplaced. Although it established that Indians may sue for breach of an oil and gas lease, contrary to the instant case, there was no indication that the state law cause of action for breach of contract in that case had been preempted by federal law.

violation of its terms. Absent an express grant of a private cause of action, "a mere proscription of behavior does not justify an inference of a private cause of action for its violation; instead, there must be some evidence that Congress intended one." *Pullman v. Chorney,* 712 F.2d 447, 449 (10th Cir.1983) (citing *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979)). Section 206.152(e)(3) was promulgated pursuant to the provisions of the FOGRMA, 30 U.S.C. §§ 1701–1757, which was enacted in order to "fulfill the trust responsibility of the United States for the administration of Indian oil and gas resources," 30 U.S.C. § 1702 and to "clarify, reaffirm and expand the ... responsibilities of the Secretary of Interior in the management of the [f]ederal oil and gas royalty accounting system." H.R.Rep. No. 859, 97th Cong., 2d Sess. at 15, *reprinted in* 1982 U.S.C.C.A.N. 4268. There is no indication that Congress intended a private cause of action for a violation of regulations promulgated pursuant to FOGRMA. *Cf. Pullman,* 712 F.2d at 450 (no indication Congress intended private cause of action for violations of regulations promulgated pursuant to Mineral Lands Leasing Act). We therefore conclude the district court did not err in dismissing Count X of Plaintiffs' complaint for failure to state a claim.

## II.

■ Plaintiffs also contend the district court erred in granting summary judgment as to several counts of their complaint. We review the district court's grant of summary judgment de novo. *Eaton v. Jarvis Products,* 965 F.2d 922, 925 (10th Cir.1992). Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law. *Id.* We view the evidence and draw any inferences therefrom in the light most favorable to the party opposing summary judgment. *Id.*

### A.

Plaintiffs contend the district court erred in granting summary judgment in favor of the government as to Count I of their complaint. In Count I, Plaintiffs alleged the government breached its fiduciary duty by failing to enforce several provisions under the Federal Oil and Gas Royalty Management Act, 30 U.S.C. § 1701–1757 ("FOGRMA"), in order to bring Meridian into compliance with the terms of the lease. Specifically, Plaintiffs contend the government should have either assessed penalties or cancelled their lease as a result of Meridian's repeated failures to timely pay royalties under the lease and that its failure to do so constitutes a breach of fiduciary duty. The district court held that as a matter of law, no breach of fiduciary duty had occurred because the government had enforced all applicable statutes and regulations.

■ The United States has a general fiduciary obligation to Indians with respect to management of oil and gas leases on Indian land. *See Jicarilla Apache Tribe v. Supron Energy Corp.,* 728 F.2d 1555, 1564–65 (10th Cir.1984) (Seymour, J. dissenting), *dissenting opinion adopted by en banc court,* 782 F.2d 855, 857 (10th Cir.), *cert. denied,* 479 U.S. 970, 107 S.Ct. 471, 93 L.Ed.2d 416 (1986); *see also Pawnee v. United States,* 830 F.2d 187, 190 (Fed.Cir.1987), *cert. denied,* 486 U.S. 1032, 108 S.Ct. 2014, 100 L.Ed.2d 602 (1988). The scope and extent of this fiduciary relationship is defined in part by FOGRMA and the regulations promulgated thereunder. *See Jicarilla,* 728 F.2d at 1565; *Pawnee,* 830 F.2d at 192; *see also United States v. Mitchell,* 463 U.S. 206, 224, 103 S.Ct. 2961, 2971–72, 77 L.Ed.2d 580 (1983) (scope of United States' fiduciary relationship with Indians defined by statutes and regulations creating fiduciary relationship). Under FOGRMA, the Secretary may assess penalties for the knowing or willful failure to make any royalty payment. *See* 30 U.S.C. § 1719. The Secretary may assess penalties after it first sends notice of deficiency to the lessee, and the lessee in turn fails to pay the deficiency. *See* 30 C.F.R. § 241.51(b)(1). Additionally, the Secretary may cancel a lease if he is satisfied that the provisions of the lease or applicable regulations have been violated. 25 C.F.R. § 212.23(a).

■ As to Plaintiff's penalty assessment claim, the record indicates that upon completion of two government audits of Plaintiffs' leases, the government gave notice to Meridian concerning unpaid royalties owed to Plaintiffs, which Meridian paid. Because Meridian paid the deficiency, the government was without authority to assess penalties. Moreover, the government is now in the process of conducting a third audit of Plaintiffs' leases and the assessment of any penalties prior to completion of the audit would be premature. Thus, the United States has complied with applicable statutes and regulations concerning the assessment of penalties and therefore did not breach its fiduciary duty. *See Pawnee*, 830 F.2d at 192 (claim for breach of fiduciary duty not properly brought when Department of Interior has complied with statutes and regulations covering the challenged action).

■ As to Plaintiffs' contention that the government breached its fiduciary duty by failing to cancel his lease, we have already determined that Plaintiffs must exhaust their administrative remedies in seeking cancellation of their lease. Thus, consideration of Plaintiffs' breach of fiduciary duty claim prior to exhaustion of the agency's procedures would be premature. Therefore, to the extent Plaintiffs' complaint raises a breach of fiduciary duty claim against the United States, the district court did not err in granting summary judgment in favor of the United States.

### B.

Plaintiffs next contend the district court erred in granting summary judgment in favor of Meridian as to Count III of their complaint for deceit. Plaintiffs contend Meridian committed deceit when it accepted assignment of the lease contracts with no intention of timely paying royalties under the lease. The district court held that because Meridian never accepted assignment of the lease, Meridian could not have committed deceit as set forth in Plaintiffs' complaint.

■ Oklahoma law provides that "[o]ne who wilfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Okla.Stat.Ann. tit. 76, § 2 (1987). An action for deceit encompasses situations in which a promise is made "without any intention of performing." *Id.* § 3. In order to show Meridian committed deceit, Plaintiffs point to the regulatory definition of lessee which provides in pertinent part:

> *Lessee* means any person to whom the United States, an Indian Tribe, or an Indian allottee issues a lease, and any person who has been assigned an obligation to make royalty or other payments required by the lease. This includes any person who has an interest in a lease as well as an operator or payor who has no interest in the lease but who has assumed the royalty payment responsibility.

30 C.F.R. § 206.151 (emphasis in original). Under this definition, Plaintiffs argue Meridian accepted an assignment of the lease's obligation to timely pay royalties under the lease with no intention of ever fulfilling that obligation.

■ Under Oklahoma law, no particular words are necessary to effect a contractual assignment; rather, the intent of the parties governs whether an assignment has been made. *Hefley v. Jones*, 687 F.2d 1383, 1387 (10th Cir.1982); *Cobb v. Baxter*, 292 P.2d 389, 391–392 (Okla.1956). In determining the intent of the parties to an assignment, all facts and circumstances surrounding the transaction must be taken into consideration. *See Young v. Mayfield*, 316 P.2d 162, 166 (Okla.1957).

■ In the instant case, Plaintiffs cannot rely on the regulatory definition of lessee to show the parties intended a contractual assignment because § 206.151 merely clarifies terms used in those portions of the regulations dealing with the valuation of gas production, *see* 30 C.F.R. § 206.150–.159, and the calculation of royalty payments as set forth in the lease, *see id.* §§ 202.51–.53, .100–101, .150–152. Because the intent of the parties determines whether an assignment has been created under Oklahoma law, the regulatory definition of lessee standing alone does not support Plaintiffs' claim that Meridian accepted assignment of the lease.

■ Plaintiffs also argue that the contract designating Meridian as the operator of

the lease created a contractual assignment of the terms of the lease. The contract designating Meridian as operator of Plaintiffs' leases unambiguously stated that *"this designation of operator does not constitute an assignment of any interest in the lease."* Under Oklahoma law, if the terms of a contract are unambiguous and clear, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties. *Phillips v. Estate of Greenfield,* 859 P.2d 1101, 1104 (Okla.1993). The language in the contract designating Meridian as operator of Plaintiffs' leases unambiguously expressed an intent that the designation does not amount to a contractual assignment of the terms of Plaintiffs' leases. We therefore conclude the district court did not err in granting summary judgment in favor of Meridian as to Plaintiffs' claim for deceit.

### C.

Finally, Plaintiffs contend the district court erred in granting summary judgment in favor of Meridian as to Count IV of their complaint for breach of fiduciary duty. Under Oklahoma law, an operator of an oil or gas lease owes a fiduciary duty to royalty owners to market oil or gas at the highest market price available at the time of any production under the lease. *See Young v. West Edmond Hunton Lime Unit,* 275 P.2d 304, 310 (Okla.1954). In the instant case, Plaintiffs do not allege Meridian failed to market gas produced under the lease at the highest available market price. Rather, Plaintiffs contend that because Meridian failed to pay royalties in a timely manner, Meridian breached its fiduciary duty "to market" the gas produced under the lease.

Plaintiffs have failed to produce any evidence that Meridian has failed to market gas produced under their lease. That Meridian failed to pay royalties in a timely manner is not evidence of a failure to market. Therefore, the district court did not err in granting summary judgment in favor of Meridian as to Plaintiffs' breach of fiduciary duty claim.

AFFIRMED.