**UNITED STATES COURT OF APPEALS**

**June 19, 2012**

**FOR THE TENTH CIRCUIT**

|  |  |
|---|---|
| CORA JEAN JECH; CHARLES TILLMAN; DUDLEY WHITEHORN; JOE HALL; JOANNA BARBARA; R. E. YARBROUGH; CODY TUCKER; JOHN JOHNSON, | |
| Plaintiffs-Appellants, | No. 11-5064 (D.C. No. 4:09-CV-00818-TLW) (N.D. Okla.) |
| v. | |
| DEPARTMENT OF INTERIOR; KEN SALAZAR, Secretary of the Interior; BUREAU OF INDIAN AFFAIRS; LARRY ECHOHAWK, Assistant Secretary, Indian Affairs; THE UNITED STATES OF AMERICA, | |
| Defendants-Appellees. | |

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiffs appeal the district court's order dismissing their complaint for failure to exhaust administrative remedies. They sued the United States of America, the Department of the Interior ("DOI") and its Secretary, and the Bureau of Indian Affairs ("BIA") and its Secretary.[1] They sought injunctive and declaratory relief that would require the DOI to conduct the elections for Principal Chief, Assistant Principal Chief, and Tribal Council of the Mineral Estate (collectively, "Mineral Estate Officials") of the Osage Tribe of Indians ("Osage Tribe"). We affirm.

## I. Background

The underlying facts are not in dispute. Plaintiffs are owners of interests in the Osage Mineral Estate. These interests, called "headrights," entitle the owner to receive mineral revenue distributions from production of the Mineral Estate. Headright owners are referred to as "shareholders." Headrights may be owned by non-Osage; not all Osage own headrights. Headrights pass to the heirs, devisees, and assigns of the owners. A shareholder may own a fractionalized interest in a headright or interests in many headrights. Income to a shareholder from the Mineral Estate is based on his or her headright interests.

---

[1] The BIA is an agency in the DOI. *Woods Petroleum Corp. v. Dep't of Interior*, 47 F.3d 1032, 1035 (10th Cir. 1995).

The Osage Allotment Act of 1906, as amended ("1906 Act"), created the Mineral Estate, identified the original shareholders, and provided that headrights would pass to their heirs, devisees, and assigns. *See* Act of June 28, 1906, Pub. L. No. 59-820, 34 Stat. 539 (1906). The 1906 Act also prescribed the form of the Osage Tribal government, including the election of Chiefs and a Tribal Council. Under the 1906 Act, only shareholders were allowed to vote and the tribal officials also had to be shareholders. Each voter was entitled to a weighted ballot based on the value of his or her headright interest.

In 2004, Congress enacted the Reaffirmation of Certain Rights of the Osage Tribe, Pub. L. No. 108-431, 118 Stat. 2609 (2004) ("Reaffirmation Act"). Congress recognized that many people were considered Osage, but under the 1906 Act only shareholders were "members" of the Osage Tribe. The Reaffirmation Act clarified that "legal membership" in the Osage Tribe meant headright owners, *id.* § 1(a)(2) & (3), and reaffirmed "the inherent sovereign right of the Osage Tribe to determine its own form of government," *id.* § 1(b)(2). According to plaintiffs, the Reaffirmation Act was intended "to clarify the right of all Osage people to be considered tribal members and self-govern tribal affairs *outside* the Mineral[] Estate." Aplt. Opening Br. at 7.

Following enactment of the Reaffirmation Act, the Osage Tribe adopted a new Constitution of the Osage Nation. The new Constitution changed the election rules to allow all adult members of the Osage Tribe to vote in tribal elections,

-3-

even if they were not headright owners. In addition, tribe members who did not own headrights could hold tribal office. Concerned that their headrights would be governed by Mineral Estate Officials who were neither shareholders nor elected solely by shareholders, various shareholders wrote to the BIA and demanded that it conduct the 2006 election for the governing body of the Mineral Estate pursuant to the 1906 Act, i.e., allow only shareholders to vote. *See* 25 C.F.R. Part 90 (governing DOI's conduct of Osage elections). The BIA responded by issuing several letters, all refusing the demands by plaintiff Tillman and others to conduct the election, stating that the new Osage Constitution was consistent with the Reaffirmation Act.

Plaintiffs did not appeal the BIA's decision to the Interior Board of Indian Appeals ("IBIA"), but instead filed the underlying lawsuit. They sought a declaratory judgment and a mandatory injunction to require the DOI to conduct tribal elections whereby Mineral Estate Officials would be elected only by shareholders. They claimed that the DOI had the responsibility to administer the tribal elections and to supervise the ratification of the Osage Constitution. They asserted that their headright interests were diminished by allowing non-headright owners to exercise primary control and authority over the Mineral Estate.

Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).[2]  A magistrate judge recommended granting defendants' motion to dismiss due to plaintiffs' failure to exhaust administrative remedies.  The magistrate judge reasoned that plaintiffs were required to file an appeal with the IBIA and that because they failed to do so, "the BIA's decision [was] not eligible for judicial review."  Aplt. App. at 330.  The district court conducted a de novo review and adopted the magistrate judge's recommendation to grant defendants' motion to dismiss.  Plaintiffs appeal, asserting that the letters from BIA officials represented final agency action or, alternatively, that exhaustion would have been futile.

## II.  Analysis

This court has jurisdiction to review claims for relief other than money damages against the United States, its agencies, and officers acting in their official capacity under the Administrative Procedure Act ("APA").  *Rural Water Sewer & Solid Waste Mgmt. v. City of Guthrie*, 654 F.3d 1058, 1070 (10th Cir. 2011) (citing 5 U.S.C. § 702); *see also Bowen v. Massachusetts*, 487 U.S. 879, 893, 910 (1988) (holding APA authorized review of agency action and grant of relief that was not "money damages").  We may, however, "review only 'final agency actions.'"  *McKeen v. U.S. Forest Serv.*, 615 F.3d 1244, 1253 (10th Cir. 2010) (quoting 5 U.S.C. § 704).  "[T]he hallmarks of APA finality" are:  (1) the

---

[2]      The motion to dismiss also invoked Rule 12(b)(7) (failure to join a party), but this rule is not pertinent to the issues presented on appeal.

agency "determined rights or obligations;" (2) "legal consequences flow" from the agency action; and (3) the agency action "marks the consummation of the agency's decisionmaking process." *Sackett v. EPA*, 132 S. Ct. 1367, 1371-72 (2012) (internal quotation marks omitted) (ellipsis omitted). In addition, "[t]he APA's judicial review provision . . . requires that the person seeking APA review of final agency action have 'no other adequate remedy in a court.'" *Id.* at 1372 (quoting 5 U.S.C. § 704). Dismissals under either Rule 12(b)(1) or 12(b)(6) "for failure to exhaust administrative remedies under the BIA's regulations . . . are generally reviewed de novo." *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1294 (10th Cir. 2003); *see also id.* at 1295 (noting that any findings of jurisdictional facts are reviewed for clear error).

"A party must exhaust administrative remedies when a statute or agency rule dictates that exhaustion is required." *Coosewoon v. Meridian Oil Co.*, 25 F.3d 920, 924 (10th Cir. 1994). Pursuant to the DOI's regulations, "[n]o decision, which at the time of its rendition is subject to appeal to a superior authority in the [DOI], shall be considered final so as to constitute Departmental action subject to judicial review," absent concerns not applicable here. 25 C.F.R. § 2.6(a). Where an official has failed to act, such as failing to conduct elections for the Mineral Estate Officials as plaintiffs allege, the appeal process requires the party to file a written request that "the official take the action originally asked of him/her; (2) [d]escribe the interest adversely affected by the official's

-6-

inaction;" and (3) state that an appeal shall be filed unless the official takes action within ten days of his or her receipt of the written request or sets a date by which action will be taken. 25 C.F.R. § 2.8(a). The official "must respond within ten days of receipt of the request by either issuing a decision on the merits of the request or establishing a later date by which a decision shall be made." *Coosewoon*, 25 F.3d at 925 (citing 25 C.F.R. §2.8(b)).

Plaintiffs acknowledge that they did not follow these appeal procedures. They assert, however, that the letters from various BIA personnel, as well as the DOI's refusal to conduct the 2006 election, qualify as final agency action. Plaintiffs also complain that the DOI did not conduct the election held in 2010, but issues concerning that election were not raised in the district court and will not be addressed here. *See ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1182 (10th Cir. 2011) ("This court will generally not consider an argument that was not raised in the district court."). Plaintiffs contend that (1) the letters announced the DOI's settled agency position, (2) the letter from the Assistant Secretary of Indian Affairs is final agency action, and (3) the decision set forth in the letters "was final when rendered because it would not be made inoperative pending appeal and it was a decision from which legal consequences flow," Aplt. Opening Br. at 17.

It is undisputed that the BIA personnel who wrote to the shareholders consistently declined to step in and conduct the 2006 election. One of the letters

-7-

was issued by the Assistant Secretary of Indian Affairs. As the regulations provide and defendants concede, a letter from the Assistant Secretary can be a final agency action. *See* 25 C.F.R. § 2.6(c). Plaintiffs may not now argue, however, that the Assistant Secretary's letter constitutes final agency action pursuant to § 2.6(c), because they did not present this argument to the magistrate judge. *See ClearOne Commc'ns, Inc.*, 653 F.3d at 1185 (holding party had waived an issue not raised to the magistrate judge).

None of the letters explains the BIA's reasoning for its conclusion that "[t]he Osage Constitution, adopted by a vote of the Osage people, upholds the intent and direction of the Congress," Aplt. App. at 285 (Jan. 28, 2008, letter from Assistant Secretary–Indian Affairs). Absent an appeal to the IBIA, the DOI did not explain fully its reasoning, nor was it afforded "an opportunity to correct [any] errors prior to judicial intervention, thus mooting many issues before they reach the courts," *St. Regis Paper Co. v. Marshall*, 591 F.2d 612, 613 (10th Cir. 1979).

Plaintiffs rely on authority from the District of Columbia for their claim that the BIA letters were final agency action because they reflected the settled position of the DOI and legal consequences flowed from the letters. *E.g., Seminole Nation of Okla. v. Norton*, 223 F. Supp. 2d 122, 126-29, 142 (D.D.C. 2002) (chronicling long and complex administrative history, which included two agency appeals; concluding that one of many letters issued by the

BIA was "sufficient to constitute final agency action"). Plaintiffs therefore contend that they were not required to file an appeal to the IBIA.

Under the circumstances of this case, we decline to depart from our circuit authority concerning agency exhaustion. The exhaustion requirement "'recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer.'" *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 550 (10th Cir. 2001) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). The requirement is particularly forceful "when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise." *Id.* (internal quotation marks omitted). As noted, none of the letters from the BIA provides an analysis of the agency's position concerning the 1906 Act, the Reaffirmation Act, the new Constitution of the Osage Nation, or 25 C.F.R. Part 90. Moreover, the record before us does not include all the letters written to the BIA, so we cannot ascertain the precise issues the DOI was asked to address.[3]

---

[3] We determine that the letters from the BIA do not constitute final agency action; therefore, we need not resolve the BIA's argument that letters addressed to a non-party cannot satisfy the exhaustion requirement.

Plaintiffs further argue that the DOI's refusal to conduct the 2006 election was subject to judicial review because the refusal was not made inoperative pending appeal. *See Darby v. Cisneros*, 509 U.S. 137, 154 (1993) ("[W]here the APA applies, an appeal to a superior agency is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." (internal quotation marks omitted)). As the magistrate judge pointed out, plaintiffs do not explain how the DOI's *refusal to act* to conduct the 2006 election could be made inoperative. Aplt. App. at 331-32. Moreover, the agency's rules require appeal of the agency's inaction. *See* 25 C.F.R. §§ 2.6(a), 2.8; *Coosewoon*, 25 F.3d at 925 (holding plaintiff was required to comply with DOI's administrative appeal requirement to challenge agency's refusal to act).

Plaintiffs also contend that even if the BIA letters did not constitute final agency action, plaintiffs were not required to exhaust administrative remedies because exhaustion would have been futile. The futility exception may apply where (1) the agency "lacked the authority or the ability to resolve [the dispute]," (2) the case presents "purely a question of statutory interpretation," or (3) "the court would not benefit from allowing the [agency] to develop a full administrative record on the issue." *Forest Guardians v. U.S. Forest Serv.*, 641 F.3d 423, 433 (10th Cir. 2011) (per curiam).

-10-

Considering these criteria, we conclude that exhaustion would not be futile. There is no dispute that the agency had the authority to grant the relief plaintiffs sought. Plaintiffs focus on the second criterion, arguing that the pivotal issue concerns the purely legal question of the Reaffirmation Act's effect on the 1906 Act with respect to the Mineral Estate. But we determine that the third criterion prevails. Exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *United Tribe of Shawnee Indians*, 253 F.3d at 550 (internal quotation marks omitted). "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975). We conclude that requiring plaintiffs to exhaust their claims would further these purposes and so would not be futile.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge

-11-